CANNELL, APPELLEE, *v.* RHODES, APPELLANT.

(No. 50450 — Decided April 17, 1986.)

*J. Ross Haffey, Jr.* and *Edward G. Bohnert,* for appellee.

*Thomas M. Carolin,* for appellant.

MARKUS, J. The defendant-client, Barbara S. Rhodes, appeals from a judgment awarding her divorce lawyer payment for his fees plus prejudgment interest. She challenges several evidentiary rulings and the court's prejudgment interest award. We agree with the defendant-client that the court improperly admitted unauthenticated exhibits which disclosed prejudicial information about the client's offer to settle this controversy. Therefore, we reverse and remand for a new trial. Otherwise, we reject the remaining assignments of error.

The client retained the attorney, John D. Cannell, in March 1976. She discharged him in December 1977; the precise date of discharge was contested. The attorney testified that he sent the client a bill for $45,252.10 for his services on January 31, 1978, but the client denied receiving it. She contended that she was unaware of the exact amount of his claim until this action was filed. However, she admitted receiving a letter in December 1977 in which the attorney claimed that fees and expenses for himself and co-counsel exceeded $50,000.

The attorney testified that the client orally agreed to pay him $80 per hour for his services, plus expenses. He said it was his usual practice to explain his fees during the client's first interview, and that was what he did in this case. The client stated that the attorney never told her that he would charge by the hour. She said that he repeatedly told her not

to worry about his bill. The court disallowed testimony from one of the attorney's other clients that the attorney did not discuss his fees with her. The client proffered comparable testimony from several other former clients.

The client asserted that the attorney's claims were barred by the statute of limitations and by laches. She also contended that he did not act in her best interests, and that his services were worthless to her. She counterclaimed for fraud and failure of consideration for the original retainer she paid.

The court dismissed the client's counterclaims. The jury awarded the attorney the precise amount of his bill, $45,252.10. By interrogatory answers, the jury found that (a) the parties had an express oral contract for the attorney's services at the rate of $80 per hour, and (b) the statute of limitations did not bar his claim. The court entered judgment on the verdict with interest from February 1, 1978, the day after the attorney reportedly sent his bill for that amount.

I

The client first contends that Ethical Considerations preclude an award for prejudgment interest on an oral contract for attorney's fees. She bases this contention on EC 2-18 and 2-22 (formerly EC 2-19 and 2-23) of the Code of Professional Responsibility:

"EC 2-18. As soon as feasible after a lawyer has been employed, it is desirable that he reach a clear agreement with his client as to the basis of the fee charges to be made. Such a course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. *It is usually beneficial to reduce to writing the understanding of the parties regarding the fee,* particularly when it is contingent.* * *

"* * *

"EC 2-22. *A lawyer should be zealous in his efforts to avoid controversies over fees with clients* and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client." (Emphasis added.)

However, the code's Ethical Considerations are aspirational, not mandatory. See Preface, Code of Professional Responsibility. If the ethic's code has any significance in determining an attorney's right to recover interest, these provisions do not control that issue.

The award of prejudgment interest in this case is governed by R.C. 1343.03(A):

"* * * [W]hen money becomes due and payable upon * * * any book account, * * * upon all verbal contracts entered into, * * * the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable * * *."

The statute clearly does not require that the contract be in writing for the creditor to obtain prejudgment interest.

Prejudgment interest may well be an element of damages for the jury to assess. However, the court's later assessment of interest here was harmless. The attorney's complaint included a prayer for interest from February 1, 1978; the money was then due and payable, and the jury confirmed the amount of the claimed debt. Under the circumstances, R.C. 1343.03(A) would have required an award of interest. Consequently, we overrule the first assigned error.

II

The client next complains about the court's exclusion of testimony from the attorney's other clients that he did not discuss his fees with them. She claims that this evidence would have rebutted his testimony that he discussed his fees

with her in accordance with his usual practice.

If the purpose of this testimony was to impeach the attorney's testimony that he generally discussed fees with clients, then it addressed a collateral matter. The court has discretion to exclude such evidence, lest it lead to extended controversy about marginally relevant matters. Evid. R. 403(B); *Schwartz* v. *Wells* (1982), 5 Ohio App. 3d 1, 3, 5 OBR 1, 3-4, 449 N.E. 2d 9, 12. We cannot say that the court abused its discretion by precluding such evidence.

If the purpose was to present substantive evidence of a "habit" or "routine practice" not to discuss fees with clients, it was also properly excluded. Evid. R. 406 provides that evidence of a person's habit or an organization's routine practice "is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." "Habit" or "routine practice" is generally defined as a customary response to a regularly recurring situation. Consequently, evidence that the person or organization responded in that fashion on a few occasions may be insufficient to show a habit or routine practice of responding in that fashion. *Bolan* v. *Adams* (1984), 19 Ohio App. 3d 206, 207, 19 OBR 349, 350-351, 483 N.E. 2d 1187, 1189-1190; *Carter* v. *Simpson* (1984), 16 Ohio App. 3d 420, 423-424, 16 OBR 490, 494-495, 476 N.E. 2d 705, 709.

Evidence of habit or routine must show that the person or organization engaged in the behavior regularly enough to make it probable that he or it behaved that way on this occasion. The proposed testimony would not have demonstrated such regularity with any substantial reliability. At best, it would have shown a few instances of the conduct. Here again, the trial court has some latitude in determining whether the proponent of habit or routine

evidence has provided sufficient foundation for its admission. We cannot say that the court abused that discretion, so we overrule the second assignment of error.

## III

The third assigned error asserts that the court improperly admitted over the client's objection evidence of statements made during compromise negotiations. It also claims that the court should not have allowed the attorney's counsel to cross-examine the client about confidential communications between her and her new attorney.

The client claimed that she never received the attorney's bill and was unaware of the amount of his claim until this suit was filed. She had retained her new divorce counsel five years before the plaintiff filed this suit. On cross-examination, the attorney's counsel elicited the following testimony:

"Q. Did you discuss with your [new divorce] attorney bills you received or the amount of Mr. Cannell's [plaintiff's] bill with regard to services rendered?

"MR. OVIATT: Objection.

"THE COURT: Overruled.

"A. No, sir.
"* * *

"Q. Mrs. Krantz [defendant], isn't it a fact that you authorized your attorney to negotiate with Mr. Cannell for the purpose of settling his claim against you for services rendered ?

"MR. OVIATT: Objection

"THE COURT: Overruled. Did you ever do that?

"THE WITNESS: No, sir.
"* * *

"Q. Mrs. Krantz, isn't it a fact that you knew what Mr. Cannell's claim for the legal services rendered was in January of 1978?

"A. No, sir. I don't remember that, no. No, I do not remember that.

"Q. Did you discuss Mr. Cannell's

claim with your attorney, Seymour Terrell, at that time?

"MR. OVIATT: Objection.

"THE COURT: Overruled.

"* * *

"A. We didn't discuss that. We just discussed Mr. Cannell.

"Q. In the. discussion of Mr. Cannell, did the amount of his legal services come up?

"MR. OVIATT: Objection, your Honor.

"THE COURT: Overruled.

"A. Not that I remember, sir.

"* * *

"Q. Did you authorize Mr. Terrell to attempt to come up with a settlement number with Mr. Cannell regarding [his fees]?

"MR. OVIATT: Objection.

"THE COURT: You may answer that.

"A. I told Mr. Terrell that he could talk to Mr. Cannell.

"* * *

"Q. What is it that you authorized Mr. Terrell to talk about?

"A. Nothing. I just said if there is contact — you know, I don't know. I had received nothing from Mr. Cannell."

The attorney's counsel presented the court with two letters to show his foundation for questions about her discussions with her new lawyer. Both letters were from her new lawyer to the attorney. One made a specific monetary offer of settlement; the second withdrew the offer. The court permitted the lawyer's attorney to cross-examine the client about her asserted ignorance of the fee bill on condition that reference to settlement efforts referred to "no money." However, the court subsequently admitted the letters, which contained a specific offer to settle for $21,000 plus a previous $4,000 retainer, or a total of $25,000.

The cross-examination of the client did not violate the attorney-client privilege. A communication which is not intended to be confidential is not privileged. *Emley* v. *Selepchak* (1945), 76 Ohio App. 257, 261-262, 31 O.O 558, 560, 63 N.E. 2d 919, 921. A client conveys settlement authority to the lawyer so the lawyer can communicate it to the opposing party. Both negotiation letters disclosed the fact that this client discussed the amount of the. previous attorney's claim with her new lawyer for that purpose. Thus, neither of these communications was intended to be confidential. See *Walsh* v. *Barcelona Assoc., Inc.* (1984), 16 Ohio App. 3d 470, 472, 16 OBR 553, 554, 476 N.E. 2d 1090, 1093.

Testimony that a client authorized negotiations may be admissible to show the client's knowledge about the claim under negotiation. Such evidence is not offered for the impermissible purpose of proving liability for the claim or its amount. Evid. R. 408. Additionally, the testimony by the client in this case was clearly harmless, since she denied any discussion about the amount of the claim or its merit.

However, the court erred by admitting the negotiation letters themselves. No witness ever identified or authenticated the letters. See Evid. R. 901(A) and (B). They were not self-authenticating under Evid. R. 902. They were not used to impeach the client's testimony; she was never asked about them. Their admission clearly violated the proscription against evidence of settlement offers "to prove liability for * * *.the claim or its amount." Evid R. 408. Their prejudicial effect substantially outweighed any probative value, because the pernicious effect of settlement evidence commonly misleads jurors to believe that the offering party owed. at least that amount. See Evid R. 403(A). That prejudicial effect was heightened when the letters accompanied the jury to its deliberations without any limiting or cautionary instructions.

Hence, this error requires us to

reverse the judgment and remand the case for a new trial.

### IV

The client finally argues that the court abused its discretion by failing to limit opinion and reputation testimony concerning the attorney's truthfulness. However, she failed to object specifically to the cumulative nature of that testimony, and so waived that supposed error. Evid. R. 103(A)(1). Furthermore, she herself presented cumulative evidence of the attorney's reputation for non-truthfulness. The court did not abuse its discretion by allowing the attorney to respond in kind. We therefore overrule the fourth assigned error.

We reverse the judgment for the third assigned error and remand the case for a new trial.

*Judgement reversed and cause remanded.*

PARRINO, C.J., and CORRIGAN, J., concur.