**MID–AMERICAN NATIONAL BANK AND TRUST COMPANY, Appellee,**

v.

**CINCINNATI INSURANCE COMPANY, Appellant.**

[Cite as *Mid–American Natl. Bank & Trust Co. v. Cincinnati Ins. Co.* (1991) 74 Ohio App.3d 481.]

Court of Appeals of Ohio,
Wood County.

No. WD–90–7.

Decided June 7, 1991.

482

*Ellis F. Robinson,* for appellee.

*William H. Woods* and *Lisa A. Weekley,* for appellant.

*Per Curiam.*

This is an appeal from a January 4, 1990 judgment entry of the Wood County Court of Common Pleas. The challenged judgment entry granted a motion to compel which had been filed by appellee, Mid–American National Bank and Trust Company. Appellant, Cincinnati Insurance Company, raises six assignments of error which state:

"I. The Common Pleas Court erroneously held that the attorney-client privilege cannot be asserted by a client to prevent discovery of the contents of confidential communications between the client and its attorney.

"II. The finding of the Common Pleas Court that Cincinnati Insurance Company did not intend that communications between Cincinnati and its attorney be confidential is clearly erroneous and is not supported by any probative evidence.

"III. The Common Pleas Court erroneously held that Cincinnati Insurance Company waived the attorney-client privilege by using a material obtained in a confidential attorney-client communication.

"IV. The Common Pleas Court erroneously held that communications which are not relevant to the issues in this case were discoverable under Rule 26, O.R.Civ.P.

"V. The order of the Common Pleas court denies Cincinnati Insurance Company the fundamental right to effective assistance of legal counsel in this action.

"VI. The Common Pleas Court abused its discretion by ordering the production of confidential attorney-client communications, while withholding any ruling on the dispositive motion of Cincinnati Insurance Company to dismiss the action for failure to state a claim upon which relief can be granted."

For the reasons outlined below, we affirm the judgment of the Wood County Court of Common Pleas.

A careful review of the procedural history of this case is necessary to understand the assignments of error. Appellee filed a complaint in the Wood County Court of Common Pleas on June 20, 1988, alleging that appellant had breached a contract and had acted in bad faith in refusing to provide defense counsel and in refusing to pay more than $50,000 toward a settlement and court costs in a case in which appellee had been named as a defendant. Appellee asserted that an insurance policy issued by appellant to appellee contained provisions obligating appellant to provide defense counsel and payment of the entire settlement cost of $450,000. Appellant filed an answer to the complaint on July 15, 1988. During the course of discovery which followed, appellee filed a motion to compel. Appellee requested that the lower court order appellant to produce " * * * all letters of opinion received from counsel by the Defendant [appellant] concerning the insurance coverage provided to the Plaintiff [appellee] for the claims made against said Plaintiff [appellee] in a previous action * * *."

Several other motions, including motions to amend the complaint, motions to dismiss pursuant to Civ.R. 12(B)(6), and motions for summary judgment were filed following the motion to compel. On May 22, 1989, the lower court filed a journal entry granting the motion to compel and ordering an in-camera inspection. After conducting the in-camera inspection, the court filed a judgment entry on January 4, 1990, granting the motion to compel and ordering the release of correspondence received by appellant from appellant's counsel. The lower court noted that this situation was parallel to the situation described in *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 95, 22 OBR 129, 130, 488 N.E.2d 877, 878, in which the Supreme Court of Ohio ruled that an order to disclose information covered by hospital-patient confidentiality and statutory privilege was a final, appealable order, allowing

appellate review of the order even though other issues in the case were pending, *id.* at 97, 22 OBR at 131–132, 488 N.E.2d at 879. Appellant filed a notice of appeal on January 22, 1990 and on January 30, 1990 the lower court placed the remaining issues on the inactive docket until this appeal concerning the order to disclose correspondence is decided.

■ Before we consider the separate assignments of error we must first determine whether the lower court's assessment that the judgment entry granting the motion to compel is a final, appealable order is correct. As we have already noted, the case relied upon by the lower court involved an assertion of hospital-patient confidentiality and statutory privilege. A plaintiff, who was suing a hospital, after contracting Legionnaire's disease during a stay at the hospital, sought records relating to all patients who contracted Legionnaire's disease while at the hospital from August 1977 to the time of the request to produce. *Id.* at 95, 22 OBR at 130, 488 N.E.2d at 878. The hospital refused to release records relating to other patients with the names and addresses of the other patients still discernible. *Id.* The trial court ordered the hospital to release the names of the patients and the hospital appealed. The Supreme Court of Ohio stated that a two-prong test must be applied to determine whether the trial court's order to release the information was a final, appealable order. The party contesting the order to produce has the burden of demonstrating (1) that a substantial right was affected by the order; and (2) " * * * that the order was made in a special proceeding." *Id.* at 96, 22 OBR at 130, 488 N.E.2d at 878. In this case it is apparent that a substantial right, the right to maintain confidential correspondence with one's attorney, is affected by the trial court's order. See *id.* The question of whether a special proceeding exists is determined by "the weighing of the waste of judicial resources resulting from this type of interlocutory appeal and the general desire to obtain prompt and orderly disposition of litigation, against 'the need for immediate review because appeal after judgment is not practicable.'" *Id.* We conclude that a special proceeding does exist in this case because the release of correspondence from appellant's attorney to appellant could potentially result in irreparable injury to appellant making an appeal after judgment impractical. We agree with the lower court that the judgment entry from which this appeal stems is a final, appealable order.

■ Appellant contends in its first assignment of error that the lower court's ruling compelling appellant to release the correspondence requested by appellee must be overturned because the ruling destroys Ohio's attorney-client privilege, recognized in both statutory and common law, by compelling a client to disclose confidential communications. Appellant argues that the lower court erred by focusing only on R.C. 2317.02(A) before deciding that appellant

was not protected from an order to disclose the correspondence. Appellant agrees with the lower court that R.C. 2317.02(A) is drafted to apply to situations where attorneys are requested to reveal the content of communications with a client. R.C. 2317.02(A) states:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject * * *."

We also agree that the lower court was correct when it stated: "The language of R.C. 2317.02(A) is clear. It governs testimony by an *attorney*. It does not govern testimony by the *client*." (Emphasis *sic.*) We do not agree with appellant that the lower court's analysis of the issue stopped with its consideration of R.C. 2317.02(A). The lower court clearly considered the attorney-client privilege established by common law when it focused on the issue of whether the communication was intended to be confidential when it occurred and whether any confidentiality had been voluntarily waived by appellant. Accordingly, appellant's first assignment of error alleging that the lower court failed to consider the attorney-client privilege established by common law is not well taken.

Appellant's second assignment of error primarily focuses on the legal interpretation that should be given the two letters which were sent to appellee by appellant. Both letters were sent before appellee filed the complaint alleging bad faith and breach of contract. From the time appellee contacted appellant to inform appellant that appellee had been sued and to request legal counsel pursuant to the insurance policy issued by appellant, an ongoing disagreement developed between appellee and appellant regarding appellant's responsibilities to appellee. A great deal of correspondence was exchanged by attorneys representing appellee in the suit filed against appellee by a third party, and representatives of appellant. At various times appellant agreed to provide representation with a reservation of rights and then reconsidered and insisted it had no obligation under the policy to assist appellee. Eventually, as we have previously noted, the claim brought against appellee was settled. The attorney who represented appellee in the first case then contacted appellant, by letter, and informed appellant of his belief that his client was entitled to coverage under the insurance policy issued by appellant. The

attorney further informed appellant that appellee expected appellant to reimburse appellee for the full settlement cost, the attorney fees, and court costs. The letter concluded with a statement that suit would be filed against appellant if the demands of appellee were not met.

Appellant responded by sending the first letter which is at issue in this assignment of error. The letter, dated October 6, 1987, succinctly stated:

"Thank you for your letter of September 22, 1987. Please be advised that we have forwarded our entire file to an independent legal counsel for analysis. Upon receipt of the attorneys [*sic*] recommendations, we will advise you accordingly.

"Thank you for your anticipated cooperation."

The letter was signed by a regional casualty claims superintendent employed by appellant.

Several months later, appellant sent the second letter which is at issue in this assignment of error. The second letter, dated January 12, 1988, was signed by the same regional casualty claims superintendent and was five pages long. The letter informed appellee that appellant would not meet appellee's demands because: "Based upon the information which you have provided to us, the claim of * * * [appellee] does not appear to be within the coverage of the Commercial Umbrella Liability Policy for several reasons, but the most important reason is that the suit by plaintiffs was based upon intentional violation of property rights." The letter then contained an extensive discussion of recent developments in Ohio case law which appellant argued supported appellant's refusal to comply with appellee's demand. The discussion included citations to several cases and analysis of those cases.

The lower court reviewed the two letters now at issue and stated that appellant's remark in the October 6, 1987 letter that "Upon receipt of the attorneys [*sic*] recommendations, we will advise you accordingly" amounted to appellant "effectively" saying it would let appellee " * * * know what independent counsel recommended, and act accordingly." The court said: "While this was not Cincinnati's exact wording, the intention to reveal the communication of independent counsel can be assumed in light of Cincinnati's duty to act in good faith in processing and paying the claims of its insured. * * * This shows that independent counsel's opinion was not intended to be confidential. Therefore, it is not privileged."

The lower court went on to say that even if appellant did not intend to remove the confidential nature of its communications with independent counsel when it sent appellee the October 6, 1987 letter, the release of some information which was originally intended to be confidential in the second

letter, dated January 12, 1988, constituted a waiver because: "Disclosure of a portion of a communication claimed to be privileged constitutes a waiver of the privilege for the entire communication on that subject matter."

Appellant asks this court to overturn the lower court's rulings regarding the two letters in issue. The rulings which are challenged involve determinations of matters of law. Therefore, unless the lower court committed an error of law, our standard of review must be to determine whether the lower court's rulings are supported by competent and credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

■ We discern no error of law. The lower court recognized that communications made in an attorney-client relationship may be protected from disclosure because of an attorney-client privilege, which can be asserted by a client. The attorney-client privilege is well established in Ohio law. See, *e.g.*, R.C. 2317.02; Evid.R. 501. The lower court also recognized that the privilege is not absolute; that in some circumstances the privilege is lost, see, *e.g.*, *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, paragraph one of the syllabus, certiorari denied (1988), 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023; *Cannell v. Rhodes* (1986), 31 Ohio App.3d 183, 186, 31 OBR 349, 352–353, 509 N.E.2d 963, 967, or waived, see, *e.g.*, *Hercules, Inc. v. Exxon Corp.* (D.Del.1977), 434 F.Supp. 136, 156. Appellant argues that the lower court's application of the law to the facts of this case was faulty. Appellant contends that the October 6, 1987 letter did not constitute a knowing waiver of the attorney-client privilege and that appellant intended all communications with independent counsel to be confidential. Appellant points out that the October 6, 1987 letter was sent by a company employee who is not an attorney. The letter was sent in response to a previous communication from appellee, which included a demand for compensation and an assurance that suit would be filed if the demand was not met. In addition, the letter was sent before appellant ever knew what the attorney's advice would be. Appellee counters by pointing out that the letter was sent by an experienced officer employed by appellant. Appellee contends there was no intention for the communications from independent counsel to be confidential because the plain meaning of the language used in the October 6, 1987 letter was that the appellant would act in accordance with the attorney's advice and would provide a copy of the attorney's opinion to appellee. We find that there is competent, credible evidence to support the trial court's ruling that the October 6, 1987 letter demonstrates appellant had not intended to keep communications with independent counsel confidential. We note that the lower court's ruling, relating to the October 6, 1987 letter, did not include any reference to a waiver of a

privilege because the lower court determined that no privilege ever existed to be waived, since the October 6, 1987 letter shows there was no intent to keep communications from independent counsel confidential.

██ The discussion of waiver was applied to the second letter, dated January 12, 1988, by the lower court. The court assumed *arguendo* that the October 6, 1987 letter demonstrated an intent to keep communications with independent counsel confidential and to preserve the attorney-client privilege. The court then noted that a partial, voluntary disclosure of privileged materials acts as a waiver of the privilege for all other communications which relates to the same subject matter dealt with in the initial release. The lower court stated:

" * * * [Appellant] waived any attorney-client privilege when it reported part of the contents of the independent counsel's opinion. Therefore, the entire communication made by independent counsel is discoverable."

██ Again we find no error of law in that statement. Courts have previously acknowledged that a partial, voluntary disclosure of privileged communications can result in the loss of privilege for all other communications which deal with the same subject matter. See, *e.g.*, *Hercules, Inc. v. Exxon Corp., supra*, 434 F.Supp. at 156. The rule applies to disclosure of materials covered by an attorney-client privilege and to disclosure of materials which are protected by the work product doctrine. *Id.* We have carefully reviewed the January 12, 1988 letter and conclude that it relates to the subject matter of the effects of recent developments in Ohio case law relating to intentional torts and their impact on coverage available under the policy issued by appellant to appellee. A comparison of the communication which was placed under seal indicates that the communication deals with the same subject matter discussed in the January 12, 1988 letter which was sent to appellee. Accordingly, we agree with the lower court that all privileges and protections have been waived as they relate to the subject matter of this case. The January 12, 1988 letter was knowingly and voluntarily sent to appellee by appellant after consultation with appellant's attorney. An attorney-client relationship existed between the independent counsel and appellant at the time the letter was sent. Appellant's second assignment of error is not well taken.

Appellant's third assignment of error is closely related to its second assignment of error. Appellant argues that it has not disclosed privileged communications, resulting in a waiver of the attorney-client privilege and that:

"The effect of the ruling of the court is that the attorney-client privilege is only available in those cases in which the client makes no use of the information received as the result of communications with a lawyer."

Appellant argues there was no disclosure of any advice received from independent counsel or of any privileged information in the January 12, 1988 letter sent to appellant. Appellant states that mere citation to case law provided by an attorney is not a waiver of privileged information.

■ Even a casual review of the January 12, 1988 letter shows that much more than mere case citations was sent to appellee. The cases are analyzed and applied to the dispute that existed between appellee and appellant. We agree with appellant that a client cannot and should not be threatened with the loss of an attorney-client privilege just because a client makes some use of information learned through confidential communications with a lawyer. We can envision several scenarios where a client could make use of information which originated with the client's attorney in which the attorney-client privilege would remain intact. However, in this instance we find that appellant has done more than make some use of the information: appellant has passed along, to a third party, whole portions of analysis provided by appellant's attorney. By so doing, appellant has demonstrated no intention of keeping the thought processes of its attorney confidential and has waived the attorney-client privilege. See *Hawgood v. Hawgood* (1973), 33 Ohio Misc. 227, 231, 62 O.O.2d 427, 429, 294 N.E.2d 681, 684. See, also, *United States v. Jones* (C.A.4, 1982), 696 F.2d 1069, 1072–1073. Appellant's reliance on the Ohio Supreme Court case of *Duttenhofer v. State* (1877), 34 Ohio St. 91, is misplaced as the client in that case did not voluntarily disclose to a third party whole portions of analysis provided by the client's attorney concerning the client's case. The client merely took the stand in his own behalf. *Id.* at 91. Appellant's third assignment of error is not well taken.

■ Appellant argues in its fourth assignment of error that it should not be compelled to produce the correspondence between itself and independent counsel because the correspondence is not relevant to the claims brought against appellant by appellee in the lower court. Appellant argues that the claims for breach of contract and bad faith relate to actions which took place before appellant consulted with independent counsel, since the claims relate to appellant's alleged duty to defend appellee and to pay the settlement reached when a claim was brought against appellee by a third party. Appellee counters by pointing out that the correspondence between appellant and independent counsel is relevant as it relates to an ongoing breach of contract evidenced by a continuing refusal to pay appellee settlement and court costs as well as attorney fees incurred in the case brought against appellee by a third party. Appellee also contends that the correspondence could be relevant to the issue of bad faith if it demonstrates advice to appellant to pay the claim.

Appellant correctly cites Civ.R. 26(B) and Evid.R. 401 as governing the scope of discovery and defining "relevant evidence." Civ.R. 26(B)(1) states:

"In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Evid.R. 401 contains the following definition:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The Ohio Supreme Court has ruled that trial courts have discretionary power when ruling on disputes involving the discovery provisions of the Ohio Civil Rules. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659, paragraph one of the syllabus. That discretion encompasses decisions regarding the relevance of information sought during discovery. Accordingly, this court will not reverse the lower court's ruling that the correspondence was relevant absent a showing of an abuse of discretion. To show an abuse of discretion, one must demonstrate that the lower court's ruling was more than an error of judgment or law; that it was arbitrary, unreasonable or unconscionable. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 219–220, 24 O.O.3d 322, 323, 436 N.E.2d 1008, 1010. Appellant has not met this standard of proof. The trial court could conclude that the correspondence was "reasonably calculated to lead to the discovery of admissible evidence" relating to the breach of contract and bad faith claims. Appellant's fourth assignment of error is not well taken.

Appellant contends in its fifth assignment of error that it has been denied effective assistance of counsel because of the lower court's order. The basis for this contention is the belief that appellant's counsel will be forced to withdraw if the lower court's order compelling the release of correspondence is upheld, as appellant's counsel will become a potential witness. We agree that if appellant's counsel becomes a potential witness, DR 5–102(A) will apply. DR 5–102(A) states:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

However, we also agree with appellee that even if appellant's current counsel is compelled to withdraw, appellant is not precluded from hiring other competent counsel to represent appellant's interests. Appellant's argument that the lower court's order violates the purpose of the discovery rules, to allow attorneys to investigate the strengths and weaknesses of a client's case without fear of exposing that information through compelled discovery, has been dealt with in our discussion of the preceding assignments of error. The general rule of privileged communications between a client and an attorney has several exceptions. If one of the exceptions applies, an order to produce information from attorney-client discussions does not constitute a violation of the purpose of the discovery rules. Appellant's fifth assignment of error is not well taken.

Appellant's sixth and final assignment of error is an assertion that the lower court committed error when it ruled on appellee's motion to compel rather than on appellant's motion to dismiss pursuant to Civ.R. 12(B)(6). Appellant contends that the lower court should have addressed the merits of the claim before it considered discovery issues. Appellant cites no authority to support the claim that the lower court was compelled to consider the merits of the case by deciding the Civ.R. 12(B)(6) motion before it considered discovery matters and this court is unaware of any authority which would support this claim. We are cognizant of cases which establish the precedent that Ohio trial courts have an inherent right to " * * * determine the order of trials, and to direct the method of their management, which is only surrendered by an express constitutional provision or legislative enactment." *Kiefer v. Cty. Commrs.* (1892), 4 Ohio N.P. 282, 283. Appellant's sixth assignment of error is not well taken.

The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and MELVIN L. RESNICK, J., concur.

GLASSER, J., dissents.

George M. Glasser, Judge, dissenting.

I must respectfully dissent from the position of the majority in affirming the decision of the trial court in this matter.