650 So.2d 21 (1995)
Oscar Ray BOLIN, Appellant,
v.
STATE of Florida, Appellee.
No. 78905.
Supreme Court of Florida.
February 9, 1995.
*22 James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Sr. Asst. Atty. Gen., Chief of Crim. Law, Tampa, for appellee.

ON REHEARING GRANTED
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Oscar Ray Bolin, Jr. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. In accord with our decision in Bolin v. State, 642 So.2d 540 (Fla. 1994) (hereinafter Bolin I), we hold that evidence protected by the spousal privilege was improperly admitted in this case. As in Bolin I, the trial court erroneously decided that the privilege had been waived by the taking of a discovery deposition.[1] We have reviewed the record in this case to determine if the admission of this evidence requires reversal. Based on our review, we cannot conclude that the error in the admission of the spouse's testimony was harmless. We therefore remand for a new trial to be held in accordance with this opinion.[2]
Stephanie Collins was last seen on November 5, 1986, in the passenger's seat of a white van. On December 5, 1986, her body was discovered alongside a road in Hillsborough County. An autopsy revealed that Collins *23 sustained a number of stab wounds and several potentially fatal blows to the head.
The investigation into Collins' murder proved unavailing until July 1990, when Danny Coby telephoned Crime Stoppers in Ft. Wayne, Indiana, with information about the murder. Danny Coby obtained the information from his wife, Cheryl Coby, who had acquired the information during her prior marriage to Bolin. After Mr. Coby's call, Mrs. Coby told investigators that on November 5, 1986, Bolin, her husband at the time, picked her up from a restaurant and took her back to their travel trailer. Coby stated that while they were driving, Bolin made several attempts to explain the presence of a dead body in their trailer. Bolin finally told Coby that he killed a girl by hitting her over the head and stabbing her. Coby further explained that, upon their arrival at the trailer, she saw Bolin load what appeared to be the body wrapped in a quilt onto his truck. He and Coby then drove to a spot where Bolin dumped the body. Coby later identified that spot to police. When she returned to the trailer, Coby observed that everything inside, including a knife beside the kitchen sink, appeared wet. Coby also noticed several blood stains in the trailer.
Bolin was charged with first-degree murder, attempted robbery, and kidnapping. The court granted a judgment of acquittal with respect to the attempted robbery charge, and the jury found Bolin guilty of first-degree murder and the lesser offense of false imprisonment. The jury unanimously recommended death, and the judge followed the recommendation, sentencing Bolin to death for first-degree murder and to five years for the remaining charge.
The testimony of Bolin's former spouse regarding her observations of Bolin's alleged criminal activity was admissible and may be admitted in the new trial. See Kerlin v. State, 352 So.2d 45 (Fla. 1977). Coby, however, could not testify as to what Bolin told her about the murders because those statements constituted privileged communications. During their privileged communications, Bolin offered his spouse three different accounts of how the victim, whose body he and his spouse later transported, was murdered. With regard to the final account, Coby testified to the following:
A. The third version was that he had to kill the girl because she could I.D. him.
Q. When he said "he," you mean who?
A. Ray.
Q. Did he explain to you how he had done that?
A. Said he hit her over the head and then he stabbed her.
Q. Did he indicate what, if anything, he had hit her with?
A. No.
Q. Did he indicate how many times he had stabbed her?
A. He just said numerous times; he didn't say how many.
Additionally, Bolin's former spouse impermissibly recounted her discussions with the defendant, which occurred when they arrived at the trailer the night of the murder and during her stay in the hospital sometime later. We cannot say that these marital communications, in which Bolin admitted to committing the murder, did not contribute to the jury's determination of guilt. See Koon v. State, 463 So.2d 201 (Fla.), cert. denied, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 641 (1985). Thus, we cannot conclude that the admission of the privileged communications was harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In this appeal, the State also claims that even if Bolin did not waive the spousal privilege by taking Coby's deposition, he personally waived the privilege in a letter he wrote to an investigating detective. There was no need to consider this issue at trial because the trial court ruled that Bolin waived the spousal privilege by taking the discovery deposition. In light of our conclusion here and in Bolin I that the discovery deposition did not waive Bolin's spousal privilege, the State will certainly raise at the retrial the issue of whether the letter was a voluntary waiver. We therefore address that issue here.
We agree that a letter may be used to consent to the waiver of a privilege. See St. Paul Fire & Marine Ins. Co. v. Welsh, 501 So.2d 54 (Fla. 4th DCA 1987); People v. Fox, *24 862 P.2d 1000 (Colo.Ct.App. 1993), cert. denied, No. 91CA0388 (Colo. Dec. 6, 1993); Mid-American Nat'l & Trust Co. v. Cincinnati Ins. Co., 74 Ohio App.3d 481, 599 N.E.2d 699 (1991). We further agree that if a person volunteers that his or her spouse may be questioned about his or her involvement in an event or events, this may equate to consent which constitutes a waiver pursuant to section 90.507, Florida Statutes (1993). See Shell v. State, 554 So.2d 887, 894 (Miss. 1989), rev'd in part on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). Section 90.507 specifically states that a waiver occurs when the person "consents to disclosure of any significant part of the matter or communication."
The issue then with respect to the waiver is whether the circumstances surrounding the letter and the content of the letter demonstrate that this defendant voluntarily consented to law enforcement officers talking with his spouse about her knowledge of his alleged criminal activities.[3] Because this issue was not addressed at the trial, the record is not sufficiently complete for us to determine whether the letter constituted a voluntary consent.[4] If on remand the trial court determines from the circumstances in which the letter was sent[5] and from the content of the letter itself that the letter constituted a voluntary consent to such disclosure, then the marital privilege would be waived pursuant to section 90.507. Bolin's voluntarily consent to the questioning of his former spouse about her knowledge of the criminal activities for which Bolin was being investigated would permit his former spouse to testify as to Bolin's statements to her regarding the murder because the statements comprised part of what she knew about his activities. See Hoyas v. State, 456 So.2d 1225 (Fla. 3d DCA 1984). If the court determines, however, that the circumstances together with the content of the letter do not indicate that Bolin voluntarily consented to disclosure by Coby of what she knew about Bolin's alleged criminal activities, then there was not a waiver.
Based on the reasoning set forth above, we vacate Bolin's sentence, reverse his convictions, and remand for a new trial in accordance with our decision.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Prior to both cases, the State filed a motion to perpetuate the testimony of the defendant's former spouse. In granting the State's motion, the court indicated that the State could ask questions about each of the homicides Bolin allegedly committed, including the murder in this case and the murder we addressed in Bolin I. To prepare for the taping of the former spouse's testimony, the defendant took a discovery deposition. During the deposition, defense counsel asked Bolin's former spouse about statements she made to law enforcement officers regarding her communications with Bolin.
[2] Because we find this issue dispositive, we do not address the other issues raised by Bolin on appeal.
[3] We note that Florida's Evidence Code does not require that the privilege holder's consent be knowing. See Charles W. Ehrhardt, Florida Evidence, § 507.1, at 324 (1994 ed.).
[4] There is testimony in the record about the letter, but the letter itself is not included.
[5] The testimony of the officer who received the letter indicates that it might have been written in conjunction with a suicide attempt by Bolin. That fact alone would not render the content of the letter involuntary. The court, however, should consider the alleged suicide attempt as evidence relevant to whether the letter contained a voluntary consent.