793 So.2d 894 (2001)
Oscar Ray BOLIN, Appellant,
v.
STATE of Florida, Appellee.
No. SC95775.
Supreme Court of Florida.
July 13, 2001.
Rehearing Denied August 27, 2001.
James Marion Moorman, Public Defender, and Andrea Norgard and Douglas S. Connor, Assistant Public Defenders, Bartow, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Kimberly Nolen Hopkins, Assistant *895 Attorney General, Tampa, FL, for Appellee.
David Rothman, President, Miami, FL, and James T. Miller, Jacksonville, FL, for Florida Association of Criminal Defense Lawyers (FACDL), Amicus Curiae.
PER CURIAM.
We have on appeal a judgment of conviction of first-degree murder and a sentence of death imposed upon Oscar Ray Bolin, Jr. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We reverse Bolin's conviction and sentence and order a new trial as the trial court erred in admitting evidence protected by the spousal privilege.[1]
Bolin was initially convicted and sentenced to death in 1991 for the first-degree murder of Stephanie Collins. This Court, holding that evidence protected by the spousal privilege was improperly admitted at trial, vacated Bolin's sentences, reversed his convictions, and remanded for a new trial. See Bolin v. State, 650 So.2d 21 (Fla.1995) (hereinafter Bolin I). The pertinent facts, described in Bolin I, are as follows.
Stephanie Collins was last seen on November 5, 1986, in the passenger's seat of a white van. On December 5, 1986, her body was discovered alongside a road in Hillsborough County. An autopsy revealed that Collins sustained a number of stab wounds and several potentially fatal blows to the head.
The investigation into Collins' murder proved unavailing until July 1990, when Danny Coby telephoned Crime Stoppers in Ft. Wayne, Indiana, with information about the murder. Danny Coby obtained the information from his wife, Cheryl Coby, who had acquired the information during her prior marriage to Bolin. After Mr. Coby's call, Mrs. Coby told investigators that on November 5, 1986, Bolin, her husband at the time, picked her up from a restaurant and took her back to their travel trailer. Coby stated that while they were driving, Bolin made several attempts to explain the presence of a dead body in their trailer. Bolin finally told Coby that he killed a girl by hitting her over the head and stabbing her. Coby further explained that, upon their arrival at the trailer, she saw Bolin load what appeared to be the body wrapped in a quilt onto his truck. He and Coby then drove to a spot where Bolin dumped the body. Coby later identified that spot to police. When she returned to the trailer, Coby observed that everything inside, including a knife beside the kitchen sink, appeared wet. Coby also noticed several blood stains in the trailer.
Id. at 22-23.
After Coby's disclosures, Bolin was extradited to the Hillsborough County Jail to await trial for the murder of Stephanie Collins.[2] On June 22, 1991, Bolin attempted suicide. After Bolin was taken to the hospital, the chief investigator, Captain Gary Terry, entered Bolin's cell and saw a cardboard box sitting on the commode. A stamped envelope addressed to Captain Terry was on top of the box. Captain Terry had built a rapport with Bolin by interviewing him several times both in Ohio and in Hillsborough County. Captain Terry opened the envelope and read the letter, which discussed, among other things, the murder investigation.
In Bolin's first murder trial, Bolin asserted the spousal privilege and objected to the admission of Coby's testimony. Bolin's *896 objection was overruled by the trial court, which found Bolin's taking of Coby's discovery deposition waived the spousal privilege. Subsequently, Coby testified regarding the confidential statements Bolin had made to her while Bolin and Coby were married. As Coby suffered from a terminal illness, her trial testimony was videotaped to perpetuate the testimony. We reversed in Bolin I, holding that the trial court erred in admitting Coby's testimony regarding Bolin's confidential statements as Bolin's taking of Coby's discovery deposition did not waive the spousal privilege. See id. In Bolin I, we stated that although Bolin's taking of Coby's deposition did not waive the spousal privilege, Bolin's letter to Captain Terry could potentially constitute a waiver of the spousal privilege pursuant to section 90.507, Florida Statutes (1993). See Bolin I, 650 So.2d at 23. Specifically, we stated:
The issue then with respect to the waiver is whether the circumstances surrounding the letter and the content of the letter demonstrate that this defendant voluntarily consented to law enforcement officers talking with his spouse about her knowledge of his alleged criminal activities. Because this issue was not addressed at the trial, the record is not sufficiently complete for us to determine whether the letter constituted a voluntary consent.4 If on remand the trial court determines from the circumstances in which the letter was sent5 and from the content of the letter itself that the letter constituted a voluntary consent to such disclosure, then the marital privilege would be waived pursuant to section 90.507. Bolin's voluntarily consent[ing] to the questioning of his former spouse about her knowledge of the criminal activities for which Bolin was being investigated would permit his former spouse to testify as to Bolin's statements to her regarding the murder because the statements comprised part of what she knew about his activities. If the court determines, however, that the circumstances together with the content of the letter do not indicate that Bolin voluntarily consented to disclosure by Coby of what she knew about Bolin's alleged criminal activities, then there was not a waiver.
4. There is testimony in the record about the letter, but the letter itself is not included.
5. The testimony of the officer who received the letter indicates that it might have been written in conjunction with a suicide attempt by Bolin. That fact alone would not render the content of the letter involuntary. The court, however, should consider the alleged suicide attempt as evidence relevant to whether the letter contained a voluntary consent.
Id. at 24 (footnote 3 and citation omitted).
At retrial, Bolin again objected to the introduction of Coby's videotaped testimony and asserted the spousal privilege. The trial court below overruled Bolin's objection, this time finding that the language of Bolin's suicide letter constituted a waiver of the spousal privilege. The trial court had originally suppressed the letter, finding that the State did not have probable cause to seize Bolin's letter. The State filed an interlocutory appeal, and the Second District reversed, holding that Bolin did not have an expectation of privacy in his cell and therefore the letter should not have been suppressed. See State v. Bolin, 693 So.2d 583, 585 (Fla. 2d DCA 1997).
On remand, the trial court examined the letter and found that Bolin voluntarily waived the spousal privilege. The pertinent portion of the letter is as follows:
PS. these were the only five for the state of Fla. that i knowed anything about. if *897 there's Ever anything Else that you really want to know about then you'll haft to ask [Coby], Because she knew just about Every thing that i was Ever a part of. She help spend the money from most of all the armed Robbery's, and she know about all 3 of these homicide which I'm charged with.
Thus, despite Bolin's objections, Coby's videotaped testimony regarding Bolin's incriminating statements was presented to the jury.
As we noted in footnote 4 of Bolin I, we did not have the letter in the record at the time of Bolin I. See id. at 24 n. 4. Nor did we have developed in the record the circumstances regarding the letter and how the letter left Bolin's possession. In this appeal, we have a developed record regarding whether Bolin waived his spousal privilege in the letter.
In Bolin I, we refined the waiver issue by our holding: "[I]f a person volunteers that his or her spouse may be questioned about his or her involvement in an event or events, this may equate to consent which constitutes a waiver pursuant to section 90.507, Florida Statutes (1993)." Id. at 24. Therefore, the question which has to be answered is whether under the totality of the circumstances Bolin voluntarily consented to Coby's disclosure of Bolin's statements to her regarding his involvement in these criminal activities.[3] We recognize that this is an issue of fact, but on the record here, we do not find there to be competent, substantial evidence to support the trial court's decision that Bolin made a voluntary waiver through the letter. See Hill v. Ray Carter Auto Sales, Inc., 745 So.2d 1136, 1138 (Fla. 1st DCA 1999) (waiver is question of fact, and trial judge will be reversed only if there is no competent, substantial evidence to support finding).
Throughout these legal proceedings, both before and after the letter, Bolin had steadfastly asserted his spousal privilege. However, just prior to Bolin's suicide attempt, a trial court in another of Bolin's murder trials[4] held that Bolin's taking of Coby's discovery deposition constituted a waiver of his spousal privilege. Nevertheless, Bolin continued to assert his spousal privilege. In fact, Bolin had complained about the ineffectiveness of his counsel for taking the discovery deposition which resulted in the trial court's ruling that Bolin waived his spousal privilege. This Court subsequently reversed that trial court's finding of waiver. See Bolin v. State, 642 So.2d 540, 541 (Fla.1994). The language of the letter simply does not state that Bolin, by his letter, voluntarily waived the same privilege that he had steadfastly maintained until the time he wrote this letter. Rather, in view of the timing of the letter, which was written after a trial court held that Bolin's taking of the discovery deposition had waived the privilege, with respect to the privilege, it must be concluded that Bolin was acting under a reasonable belief that he did not have the privilege to waive. See Harrison v. United States, 392 U.S. 219, 225-26, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); Zeigler v. State, 471 So.2d 172, 176-77 (Fla. 1st DCA 1985). At most, it can only be reasonably inferred that Bolin was acquiescing in the trial court's ruling, not voluntarily waiving the spousal privilege.
*898 Importantly, the language of Bolin's letter does not state that he waived the spousal privilege with respect to Coby's previously given testimony. The pertinent portion of the letter says, "[T]hese were the only five in the state of Fla. that i knowed anything about. if there's ever anything else that you really want to know about then you'll haft to ask [Coby], Because she knew just about everything that i was ever a part of." This is clearly a statement directing Captain Terry to talk to Coby about other matters that Bolin would no longer be available to discuss once Bolin had committed suicide. There is no other reasonable meaning for Bolin's use of "anything else" and his use of the future tense "you'll haft to."
What is actually at issue is whether Bolin's letter clearly withdraws Bolin's prior assertion of the privilege with respect to Coby's videotaped testimony, to which the privilege had previously been asserted and overruled. We cannot agree that competent, substantial evidence supports a finding that there was a waiver regarding Coby's previously given testimony.
Furthermore, the letter was not voluntarily delivered and therefore could not be a voluntary waiver. Although we agree with the Second District that the letter did not have to be suppressed, that does not answer the question of whether the circumstances of law enforcement obtaining the letter indicate that Bolin voluntarily waived the privilege. In the case before us, the circumstances in which the letter was written do not indicate that Bolin voluntarily consented. Bolin never transferred control of the letter to an agent of the State and therefore did not make a voluntary delivery. See Haag v. State, 591 So.2d 614, 617 (Fla.1992) (delivery of pro se filing occurs "when the inmate loses control over the document by entrusting its further delivery or processing to agents of the state"). As there was no voluntary delivery of the letter, we conclude that the circumstances in which the letter left Bolin's possession do not provide competent, substantial evidence that the letter was a voluntary waiver of Bolin's spousal privilege.
Finally, even if the letter was deemed a waiver, the waiver was revoked by Bolin again objecting to the use of Coby's testimony. See Sykes v. St. Andrews School, 619 So.2d 467, 469 (Fla. 4th DCA 1993) (waiver of psychotherapist/ patient privilege revocable). While we recognize that information revealed after a privilege is waived cannot be concealed by reinvoking the privilege, see Hamilton v. Hamilton Steel Corp., 409 So.2d 1111, 1114 (Fla. 4th DCA 1982) ("[O]nce the privilege is waived, and the horse out of the barn, it cannot be reinvoked."), in Bolin's case, no privileged information was elicited as a consequence of the letter. As the State was seeking to use Coby's previously given testimony, Bolin's renewed objection revoked any waiver that could be found in the letter to this previously given and objected-to testimony.
For these reasons, we conclude that there is not competent, substantial evidence in the record to support the trial court's admission of Coby's testimony concerning Bolin's privileged statement. The trial court's error is not harmless error, as Coby's testimony regarding Bolin's privileged statements was the central focus of the State's case against Bolin. Therefore, we reverse Bolin's conviction and sentence and remand for a new trial.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, and LEWIS, JJ., concur.
*899 ANSTEAD, J., concurs in result only.
QUINCE, J., recused.
NOTES
[1] § 90.504, Fla. Stat. (1985).
[2] At the time of Coby's disclosures, Bolin was incarcerated in Ohio for an unrelated crime.
[3] The spousal privilege only applies to confidential communications. See § 90.504(1), Fla. Stat. (1985). Therefore, while Coby's testimony regarding Bolin's confidential statements to her is privileged, Coby's testimony regarding what she witnessed is not privileged.
[4] Bolin was being separately tried for two other Florida homicides.