OPINION
Defendant-appellant, David D. Chapman, appeals the May 7, 2001 judgment entry of the Franklin County Court of Common Pleas, sentencing appellant to nine years imprisonment. For the following reason, we affirm.
On July 6, 2000, appellant was indicted on one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01, one count of robbery, a felony of the second degree, in violation of R.C.2911.02, and one count of robbery, a felony of the third degree, in violation of R.C. 2911.02. A trial commenced on April 18, 2001, in which appellant did not testify. The following facts were taken primarily from the testimony of Carlos Johnson, appellant's cousin and co-defendant, John Hunter and Carol Schafer, employees of Big Bear, Columbus Police Officer Andrew Ward, and Attorney Isabella Dixon.
About 4:00 a.m. on the morning of June 28, 2000, appellant told Johnson that he wanted a ride to go and get some "free stuff." Johnson testified that appellant wanted to get "some cigarettes and groceries and a couple of * * * other things." (Tr. 18.) Appellant and Mark Woods rode in an all black Firebird Trans Am that Johnson drove. After Johnson got some gas, appellant told him to drive to Schrock Road. Johnson testified that appellant showed him a knife and stated to him, "if the guy gave him a problem then he might have to use it." (Tr. 20.) Johnson drove to Big Bear at Cleveland Avenue and Schrock Road. Appellant instructed Johnson to park the vehicle. Appellant told Johnson that he would be back, and he and Woods exited the vehicle.
Hunter testified that he saw the two men enter the store, and recognized appellant from being in the store a few days ago. (Tr. 55-56.) Hunter notified Schafer, and told her to keep an eye on the men "because something might happen." (Tr. 56.) Hunter told Schafer to follow the men around, while he stayed at the front of the store and walked back and forth to see what was going on. Hunter testified that when appellant approached the checkout, he pulled up his shirt "and told me he had a present for me and pulled that long knife out." (Tr. 62.) Hunter testified that as soon as he saw the knife, he ran in the other direction, sat, and watched as appellant and Woods tried to exit through the entrance doors of the store. (Tr. 63, 68.) Hunter testified that because he was angry with appellant, he threw a metal plastic bag holder at appellant. Appellant pulled out the knife, and ran out the exit door. Hunter ran outside and followed appellant and Woods to see which direction they headed. Hunter testified that when he stopped, "I seen a black car just disappear out of the side of this building." (Tr. 63.)
Schafer testified that she followed appellant around the store, and observed him deposit items into a small basket. When he approached the checkout, she thought it was "just [a] false alarm" and that Chapman was "going to purchase what he bought." (Tr. 106.) Schafer testified that although she could not see what was going on, she heard a commotion, and headed towards the service center to call the police. (Tr. 106-107.) She jumped up on the service center counter, and called 9-1-1. Schafer testified that she never saw a knife. (Tr. 109-110.) Schafer gave a description of appellant and Woods to the 9-1-1 dispatcher.
Columbus police officers stopped the vehicle driven by Johnson at Morse and Westerville Roads. Appellant jumped out of the passenger side of the vehicle and fled but was later apprehended. Officer Ward testified that he observed a "little red basket, had Big Bear, had a bunch of groceries inside and on the passenger floorboard was a knife." (Tr. 132.) Hunter and Schafer identified appellant and Woods as the men who were in the store.
At trial, counsel for Woods, Attorney Isabella Dixon, testified that she came in contact with appellant as a result of conferring with her client. Dixon testified that appellant "indicated to me that he was the one who did everything and that my client did nothing." (Tr. 204.) She further testified that as a result of their conversation, appellant wrote a confession.
The jury found appellant guilty on all three counts of the indictment. On May 4, 2001, the trial court merged all three counts of the indictment, and sentenced appellant to nine years imprisonment, to be served consecutively with a prior unrelated case. It is from this entry that appellant appeals, raising the following sole assignment of error:
 THE TRIAL COURT COMMITS REVERSIBLE ERROR BY ALLOWING THE TESTIMONY OF THE ATTORNEY FOR A CO-DEFENDANT, REGARDING AN ALLEGED CONFESSION BY APPELLANT, IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE OHIO AND FEDERAL CONSTITUTIONS.
In his sole assignment of error, appellant contends the trial court committed reversible error because his right to a fair trial was violated when Dixon was allowed to testify about appellant's alleged confession. Appellant argues that the trial court compelled Dixon to testify regarding her observations of Woods in the holding cell at the time appellant made his confession. Appellant argues that Dixon's testimony regarding her observations was privileged communication between her and her client and, as such, her testimony was inadmissible.
This court reviews the trial court's admission or exclusion of evidence under the abuse of discretion standard. State v. Jells (1990),53 Ohio St.3d 22, 30; Edwards v. Grant Anesthesia Assoc., Inc. (Dec. 29, 2000), Franklin App. No. 99AP-1364, unreported. Only evidence that is relevant is admissible. Evid.R. 401, 402. We will not disturb the ruling of a trial court as to the admission or exclusion of evidence absent an abuse of discretion and a showing that appellant has suffered material prejudice. State v. Martin (1985), 19 Ohio St.3d 122, 129. In order to find an abuse of that discretion, a trial court's decision must be deemed "unreasonable, arbitrary or unconscionable." State v. Mardis (1999), 134 Ohio App.3d 6, 20; and State v. Cherry (1995),107 Ohio App.3d 476, 479. We also note that appellant failed to object to Dixon's testimony, and therefore waived any error, but plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992),81 Ohio App.3d 644, 647.
Generally, communications between a client and his attorney are privileged from discovery. R.C. 2317.02(A). It is well established that communications between an attorney and his client in the presence of a third person are not privileged. Bowers v. State (1876), 29 Ohio St. 542; Mid-American Natl. Bank Trust Co. v. Cincinnati Ins. Co. (1991),74 Ohio App.3d 481, 488; and State v. Post (1987), 32 Ohio St.3d 380, paragraph one of the syllabus, certiorari denied (1988), 484 U.S. 1079.
In this case, there existed no attorney-client relationship between appellant and Dixon. Because appellant was not acting as an agent for Woods, he cannot assert the attorney-client privilege on behalf of Woods. Here, Dixon met with Woods in the same holding cell as appellant. Any communications made between Dixon and Woods, and any observations made by Dixon of her client in the presence of appellant were not privileged. Dixon testified that she did not observe any coercive behavior by her client nor did she observe her client coerce appellant into writing the confession. (Tr. 224-225.) Absent evidence of coercive behavior, appellant has failed to demonstrate how the outcome of his trial would have been different. Upon review of the record, we find no abuse of discretion in allowing Dixon's testimony.
Appellant further contends that his right to a fair trial was violated when he was precluded from cross-examining Dixon regarding his alleged confession. A careful review of the record indicated that defense counsel specifically asked Dixon "The statement specifically that was made to you was that [']I went in the store and Mr. Woods didn't do anything[']; is that right?" (Tr. 212.) Defense counsel further asked, "[T]here wasn't any statement made to you about a knife, correct? * * * And you just said he was taking responsibility for the thing?" (Tr. 212-213.) Appellant had the opportunity to confront and cross-examine Dixon. We are unable to find how appellant was precluded from cross-examining Dixon. As such, appellant's contention lacks merit.
Finally, appellant argues that his right to a fair trial was violated when the state, during closing arguments, made a misstatement of Dixon's testimony. Appellant contends that counsel's closing argument left the jury with the impression that he was never threatened into confessing, because defense counsel never approached Dixon regarding any threats.
The Ohio Supreme Court has established that a claim of prosecutorial misconduct must be evaluated in light of the entire case. State v. Maurer (1984), 15 Ohio St.3d 239. In addition, a two-part test must be applied to a claim of prosecutorial misconduct. The Ohio Supreme Court held in State v. Smith (1984), 14 Ohio St.3d 13, 14, that:
 The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. United States v. Dorr [(C.A. 1981), 636 F.2d 117], supra, at 120. To begin with, the prosecution must avoid insinuations and assertions, which are calculated to mislead the jury. Berger v. United States [(1935), 295 U.S. 78], supra, at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility. Moreover, the code provides that an attorney is not to allude to matters that will not be supported by admissible evidence, DR 7-106(C)(1) * * * .
A review of the record reveals that, during direct examination, counsel for the state asked, "Ms. Dixon, at any time has information come to you that your client made threats to * * * David Chapman?" Dixon replied, "No." (Tr. 221.) When asked, "Has Mr. Luckett [defense counsel] ever come to you and said hey * * * my client's being threatened?" Id., defense counsel objected, the trial court overruled the objection, but Dixon never answered the question. During closing arguments, counsel for the state said, "She [Dixon] testified that the defense attorney has never come to her and said, hey, your guy's leaning on my guy." (Tr. 274-275.) Defense counsel objected. A reviewing court will not reverse a conviction for misconduct of the prosecuting attorney in argument unless it clearly appears that such misconduct was prejudicial. State v. Strain (1948), 84 Ohio App. 229. While the prosecutor misstated what Dixon conveyed, the gist of Dixon's testimony was that she never received any information that her client had made threats. The remarks made by the prosecutor reflected a summary of Dixon's testimony. Cf. State v. Ferguson (1983), 5 Ohio St.3d 160. As such, appellant's right to a fair trial was not violated. Counsel for all parties should have considerable latitude during final arguments in their attempts to review the evidence presented and to suggest reasonable inferences and conclusions derived from that evidence. State v. Maddox (Nov. 4, 1982), Cuyahoga App. No. 44600, unreported; State v. Smith (1984), 14 Ohio St.3d 13. Appellant's sole assignment of error is not well-taken and is overruled.
For the following reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and DESHLER, JJ., concur.