HAWGOOD *v.* HAWGOOD.

(No. D-24296—Decided January 12, 1973.)

Common Pleas Court of Cuyahoga County, Division of Domestic Relations.

*Mr. Charles D. Leach* and *Mr. Timothy McMahon,* for plaintiff.
*Mr. Andrew McLandrich,* for defendant.

MAXWELL, J. This matter came on to be heard on plaintiff's motion to enforce a separation agreement claimed to have been agreed upon between the parties.

The facts are not in dispute inasmuch as defendant offered no testimony and plaintiff's testimony stands uncontroverted as follows:

1. The plaintiff husband filed an action for divorce

against the defendant wife on August 17, 1971, the record indicating the parties had separated.

2. The defendant wife filed her answer and counter-claim thereafter.

3. Numerous discussions were had between the parties and counsel thereafter in an effort to work out a separation agreement and resolution of the financial matters between the parties.

4. On or about February 4, 1972, the then counsel for defendant, William J. Kraus, at defendant's instance and request, forwarded a letter to counsel for plaintiff, Charles D. Leach, outlining the terms of a separation agreement as she had discussed them with Henry Hawgood, the brother of the plaintiff.

5. In August 1972, attorney Timothy McMahon became associated with plaintiff's counsel, Charles D. Leach, in this matter.

6. On August 15, 1972, counsel for plaintiff met with counsel for defendant, Timothy McMahon, and they discussed the terms of a separation agreement, as proposed by counsel for defendant, based on the said February 4, 1972, letter, and these were reduced to writing and outlined on two pages of yellow, lined, legal paper.

7. Thereafter, counsel for plaintiff advised counsel for defendant that the terms proposed by him were agreeable as contained on the two pages of yellow, lined, legal paper.

8. On August 22, 1972, the then counsel for defendant, William J. Kraus, met with defendant and after a review of the proposed terms as contained on the yellow, lined paper, she approved in writing the terms of the separation agreement to be entered into with her husband, and placed her initials on each of the two yellow, lined, legal papers.

9. Thereafter, attorney Kraus contacted plaintiff's counsel and advised him that defendant had agreed to the terms of a separation agreement and that an understanding existed between them, and that he would prepare a formal separation agreement consistent therewith.

10. Attorney Kraus did prepare a formal separation agreement in conformance with the terms as outlined on

the two pages of yellow, lined, legal paper and submitted them to opposing counsel for plaintiff's signature and return to him.

11. The plaintiff did sign the formal separation agreement and the original and two copies were returned by his counsel to attorney William J. Kraus.

12. The defendant, thereafter, reviewed the formal agreement signed by the plaintiff with attorney Kraus, but she refused to sign the same.

13. Thereafter, defendant released her then lawyer, attorney Kraus, and engaged new counsel.

14. Plaintiff, then, brought his motion to enforce the separation agreement and, at or about the same time, defendant moved to require plaintiff to pay an arrearage of temporary alimony.

15. At the hearing on the motion, defendant, through her new counsel, objected to testimony by her previous counsel, William J. Kraus, called as a witness by plaintiff, as to the letter of February 4, 1972, and the two-sheet, yellow, lined, legal paper of August 18, 1972; she also objected to the jurisdiction of the court and moved the motion be stricken for failure to file a brief accompanying same.

16. Plaintiff filed neither an answer to the motion of the defendant, nor any pleading seeking to strike same.

## Legal Issues

1. Does this court have jurisdiction to consider a motion to enforce a separation agreement?

2. Is the testimony of attorney Kraus admissible as to:

(a) The letter he wrote to attorney Leach under the date February 4, 1972, outlining terms and conditions of a proposed separation agreement forwarded on instructions of his client, the defendant wife?

(b) The two page, yellow, lined, legal paper, outlining terms of the proposed separation agreement under the date August 18, 1972, and approved by the initials of his client, the defendant wife?

(c) That which occurred with respect to the proposed separation agreement between attorney Kraus and counsel for plaintiff?

(d) That which occurred with respect to the proposed separation agreement between attorney Kraus and the defendant wife, his client?

3. Was there an oral separation agreement entered into between the parties?

4. If so, is the oral agreement as reduced to writing enforceable by this court?

Each of these propositions will be separately discussed.

I. Does this court have jurisdiction to consider a motion to enforce a separation agreement?

It is a fundamental rule of law that a court will make every effort to encourage the settlement of litigation.

This fundamental proposition is well stated in 15 American Jurisprudence 2d 938, Compromise and Settlement, Section 4, which states, in part:

"*Policy of law to encourage compromise and settlement.* The law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation. This view is applicable in courts of equity as well as in courts of law. The courts have considered it their duty to encourage rather than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims. In pursuance of the policy of the law to encourage the settlement of controversies out of court, the courts have treated a party's offer of compromise as an effort to obtain peace rather than as an admission of the validity of another party's claim, and an unaccepted offer of compromise is inadmissible as evidence of such an admission. * * *"

It is also a fact that the legislature did enact R. C. 3103.06, which permits a husband and wife to enter into a separation agreement.

The language of the statute is as follows:

"A husband and wife * * * may agree to an immediate separation and make provisions for the support of either of them and their children during the separation."

By reason of the foregoing, the court finds that it does have jurisdiction, both under common law and by statute, to enforce a separation agreement. Plaintiff's motion ob-

jecting to the jurisdiction of the court is not well taken and is therefore overruled.

Plaintiff also moved to strike the motion of defendant for failure to file a brief. The evidence disclosed that counsel for the plaintiff forwarded defendant's counsel a letter which included a list of legal authorities upon which defendant intended to rely at the time of the hearing. Rule 11(B) of the rules of this court only requires the filing of "a list of citations of the authorities" on which the moving party relies. Such a list was furnished to the plaintiff. If plaintiff had any objection in this regard, he had the right under Rule 11(C) to file a motion to dismiss or offer reasons in opposition prior to the date of the hearing of this matter, but this plaintiff and his counsel failed to do. Accordingly, the court finds this objection by plaintiff not well taken and overrules the same.

II. *Is the testimony of attorney Kraus admissible?*

(a) As to the letter of attorney Kraus, to attorney Leach, dated February 4, 1972, the answer is *yes* because after the defendant authorized her attorney to deliver a letter to opposing counsel containing the terms of a proposed separation agreement, the matters contained therein were communicated to a third party and, thus, lost their privileged nature.

The law of privileged communications is clear that in order for the privilege to be applicable, the communication must be confidential. Where the client authorizes the delivery of information to a third party, the privilege and the confidential nature of the communication no longer exists. 56 Ohio Jurisprudence 2d 688, Witnesses, Section 265, states the general rule as follows:

"As already shown, in order that the rule as to privileged communications between an attorney and his client shall apply, it is necessary that the communications be confidential. Therefore, if a client's communication to his attorney is made in the presence of a third person not the agent of either party, it ceases to be confidential and accordingly is not privileged, and may be testified to by the attorney. The very nature of the transaction and the cir-

cumstances surrounding it are inconsistent with the notion that the communication was ever intended to be confidential. In such cases, the attorney, as well as the third person, is permitted to testify, not because the privilege has been waived, but because the communication, not having been made in confidence, is not privileged.''

It is therefore clear and manifest that there is no privilege connected with the communication and it is, therefore, admissible. The objection of plaintiff thereto is overruled and the testimony is admitted into evidence.

(b) As to the two pages of yellow, legal, lined sheets, the testimony was that these two sheets of paper were prepared during a meeting between attorney Kraus, for defendant, and attorney McMahon, for plaintiff, and that, subsequently, the same were approved by the defendant who initialed them.

Under the foregoing circumstances, there is no valid basis for the exclusion of these two documents from evidence, and based on 56 Ohio Jurisprudence 2d *supra*, the objection is overruled; the sheets are held to be admissible in evidence.

(c) As to that which occurred with respect to the separation agreement between attorney Kraus and counsel for plaintiff, the law is clear that communications between counsel for respective parties is neither privileged, nor inadmissible since the privilege only exists as to communications between an attorney and his client. R. C. 2317.02, which describes ''privileged communications and acts,'' states, in part:

''The following persons shall not testify in certain respects:

''(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client * * *.''

It is noteworthy that no mention is made of communications between counsel.

The court, therefore, finds that the objection of plaintiff to the testimony of attorney Kraus as to what occurred between him and opposing counsel is not well taken and is overruled.

(d) As to what occurred with respect to the proposed separation agreement between attorney Kraus and his client, the defendant wife, it is the general rule that an attorney may not testify as to communications between himself and his client. However, the privilege is restricted to communications only and does not apply to facts which have occurred.

The distinction is carefully explained in the case of *McKelvey* v. *McKelvey*, 14 O. C. C. (N. S.) 331, wherein the validity of a gift made by a decedent was in question and the only witness available was the lawyer who presumably carried out the instructions of his client. The representative of the estate objected to the testimony of the lawyer on the ground that it violated the attorney-client privilege. The court, in overruling the contention of the estate, stated at 332:

"In their depositions are related conversations between Mr. O'Brien [the attorney] and Miss McKelvey [the decedent] with reference to what she wanted done with the money and his advice to her. These conversations we think are clearly incompetent under Section 11494, General Code, which prohibits an attorney from testifying to a communication made to him by his client in that relation and his advice to the client. *Some facts are related,* however, which we think are competent. Mr. O'Brien [the attorney] says that he took the money which was collected on the insurance policy, and that he went to the Post Office, purchased the money orders in question, took them to his office and delivered them to Miss McKelvey. The purchase of the order in the name of Mrs. Hupfer [the donee] was no doubt done under the direction of Miss McKelvey and we think it evidenced an intention on her part to give the money to *her sister.*" (Emphasis added.)

Similarly, attorney Kraus may not testify to any direct conversations he had with Mrs. Hawgood, his client, but he may be compelled to testify to the facts which resulted from those conversations which indicate her intention to enter into a separation agreement. This is particularly true where the course of dealings between the parties indicate that there were reciprocal offers and an acceptance

of an agreement to resolve the property differences between the parties, and that each of the parties authorized their respective counsel to proceed to finalize such a separation agreement.

The facts as to the approval of the separation agreement, as related by attorney Kraus from the actions of the defendant wife, are admissible, also, because the defendant approved the separation agreement and authorized the communication of this fact to opposing counsel. This was in a confidential communication, but it was made for the purpose of advising opposing counsel that an assent to an agreement existed and that a formal contract in furtherance of the agreement would be drawn as a separation agreement. In this respect the language of 56 Ohio Jurisprudence 2d 687, Witnesses, Section 264, is particularly appropriate and sets forth the governing law:

"Nevertheless, there must be something confidential in the nature of the communication in order to make the attorney incompetent as a witness; that is, the communication must be made in confidence for the purposes of the relation of attorney and client, and if it appears by extraneous evidence, or from the nature of the transaction or communication, that confidence was not contemplated, and that the communication was not regarded as confidential, then testimony of the attorney or client may be compelled. Thus, communications which the attorney, in the discharge of his duty to his client, *is of necessity obliged to make public, or those which are made to him for that purpose, cannot be said to be confidential and therefore are not privileged. So, an attorney may testify to his own actions in pursuance of the directions of his client.*" (Emphasis added.) See, *McEntire* v. *McEntire*, 107 Ohio St. 510.

Therefore, what the defendant wife did as to the proposed separation agreement, is admissible. The fact of her approval is admissible; the fact of her subsequent refusal to consummate the agreement is also admissible; and the court so finds and excludes only the evidence as to any direct communications between defendant and attorney Kraus. All other testimony of attorney Kraus is admitted in evidence.

III. *Was there an oral separation agreement entered into between the parties?*

The essential elements of a viable agreement between two parties are:

(a) An Offer;
(b) An Acceptance;
(c) Consideration.

A contract has been said to be an agreement founded on consideration between two parties. This fundamental principle is well stated in 11 Ohio Jurisprudence 2d 246, Contracts, Section 2, as follows:

"A contract has been defined by the Ohio courts as an agreement upon sufficient consideration between two or more persons to do or not to do a particular thing."

A separation agreement is no different than any other contract and the rules governing contracts generally govern the validity and interpretation of separation agreements.

The facts and evidence in this cause clearly demonstrate (1) that on August 18, 1972, counsel for plaintiff discussed with attorney Kraus, counsel for defendant, terms of a separation agreement suggested by attorney Kraus; (2) thereafter plaintiff's counsel discussed such terms with his client and obtained approval thereof; (3) plaintiff's counsel communicated the approval to attorney Kraus; (4) attorney Kraus discussed the terms and conditions with his client, the defendant, and on August 22, 1972, she approved the same by initialing the work sheets; (5) attorney Kraus advised plaintiff's counsel of defendant's approval.

It is, therefore, clear and this court finds that at the point of defendant's approval and the communication to plaintiff's counsel, there was a viable and valid oral agreement of separation entered into by and between the plaintiff husband and defendant wife.

IV. *Is the oral agreement as reduced to writing enforceable by this Court?*

An examination of the written separation agreement already signed by the plaintiff husband reveals that it is in exact conformance in its essentials with the terms and conditions approved by both parties as contained in the

work sheets—the outline terms of the separation agreement between the parties.

The court has already found that the approval of the work sheets constituted an oral separation agreement between the parties.

Is such an agreement enforceable? This court holds that it is, in the same manner that any oral agreement between two parties, once proved, is enforceable.

In this respect see 11 Ohio Jurisprudence 2d 289, Contracts, Section 48, which states, in part:

"An agreement to make a written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be, if executed. The mere fact that parties who have agreed verbally have also agreed to reduce their contract to writing, does not prevent the agreement from being a contract if the writing is not made."

The courts have approved this fundamental proposition of law. See the case of *Blaney* v. *Hoke*, 14 Ohio St. 292, wherein the court said in paragraph 1 of the syllabus:

"Where an agreement, not within the purview of the statute of frauds, is in all other respect complete,—and in the absence of any understanding between the parties that the same should not be complete until reduced to writing— the same will bind the parties, although it may have been understood between them that the agreement should afterward be formally reduced to writing and executed."

It is more important to enforce settlement agreements than ordinary agreements because without settlements courts would be unable to function and, as previously cited, the law favors the resolution of controversies and uncertainties through compromise and settlement, rather than through litigation.

Thus, it is important that this court enforce and support the oral agreement of settlement arrived at between the parties and their counsel.

Since the written separation agreement is, in fact, a formal expression of the informal written memorandum agreement already found to exist, this court does have the power and authority to enforce the written agreement.

In this connection the court relies upon the case of *Spercel* v. *Sterling Industries*, 31 Ohio St. 2d 36. In that case, the court held that an oral settlement agreement arrived at between the parties was binding upon them, notwithstanding the withdrawal of one of the parties from the agreement. In commenting on the refusal of the trial court to recognize the oral settlement, the Supreme Court, at page 39 of the opinion, said:

"Thus the trial court refused, in effect, to recognize the validity of the journal entry filed on November 9, 1965, and held for naught the settlement proceedings in which all parties concurred at the settlement conference. That conclusion on the part of the trial court overlooks the effect of the settlement agreement.

"*Main Line Theatres* v. *Paramount Film Distrib. Corp.* (1962), 298 F. 2d 801 (certiorari denied, 370 U. S. 939), involved a settlement agreement. The court there found the agreement to be binding, stating, in footnote 1, on page 802:

" 'There was no formal offer and no formal acceptance. Neither was there a written settlement agreement. But the record warranted a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation for $10,000. We agree with the district court that the law requires no more formality and not greater particularity than appears here for the formation of a binding contract. Cf. *Taylor* v. *Stanley Co. of America* (1932), 305 Pa. 546, 158 A. 157; *Schermer* v. *Wilmart* (1925), 282 Pa. 55, 127 A. 315; Restatement, Contracts, 19(b), 26.'

"We concur with the foregoing analysis of the effect of a settlement agreement, and conclude that the agreement reached here between the parties was of binding effect.

"In *Herndon* v. *Herndon* (1971), 227 Ga. 781, 183 S. E. 2d 386, 388, the Supreme Court of Georgia stated:

" '*Where the parties to a case pending in court enter into a definite * * * oral settlement agreement, compromising the issues, and there being no denial of this agreement, it is the duty of the court to make the agreement the judgment of the court and thereby terminate the litigation.*'

"Even stronger is the language found in *Cummins Diesel Michigan, Inc.*, v. *The Falcon* (1962), 305 F. 2d 721, 723, where the court stated ' * * * *that a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the court.*' " (Emphasis added.)

See, *McEntire* v. *McEntire, supra*, and *Garver* v. *Miller*, 16 Ohio St. 528.

The court finds that the written separation agreement does represent the agreement of separation arrived at between the parties and orders the same in full force and effect. Further, the court adopts such separation agreement as its order in this cause.

For all the foregoing reasons the motion of plaintiff is granted and the court has prepared an order accordingly.