OPINION
James D. Neiheiser, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, Case No. D-167400, in which the trial court considered issues relating to child support arrearage, modifications, emancipation of the couple's minor children, college expenses and requests for attorney fees arising out of a number of motions filed by defendant-appellant and Barbara A. Neiheiser, aka Susan Scott, plaintiff-appellee. Defendant-appellant assigns four errors for this court's review. Contained within the four assigned errors are twenty related "issues presented for review."
For the following reasons, defendant-appellant's appeal is not well taken.
Defendant-appellant and plaintiff-appellee were married on August 9, 1974. Two children were born as issue of the marriage, Ryan James, born January 8, 1979, and Rachelle Susan, born August 1, 1980.
On January 6, 1985, the parties entered into a joint custody plan in anticipation of the ultimate dissolution of their marriage. Both parties were represented by counsel during the drafting, negotiation and execution of the joint custody plan which provided in pertinent part:
 (4) Support and Education of Children: The parties agree as follows with respect to the support and education of the children:
 (a) Support and Maintenance. The parties agree that they will each be responsible for the support and maintenance for their Children as part of and in connection with their living arrangements with the parties, and as further provided below in connection with the Father's additional obligations respecting: (1) medical expenses of the Children and, (2) private school expenses of the Children and (3) child support payments while the Children are attending public school.
 (b) Private School. It is the intention of the parties to continue the private grade and high school education of the Children while they are minors, and the Father agrees that he will pay or will cause to be paid each minor child's reasonable private grade and high school transportation and education expenses. In the event that any child goes to public school instead of private school, pursuant to the provisions hereof, the Father shall pay to the Mother as child support for such child, the sum of $350.00 per child per month for each month in which the child spends any time as a public school student. The parties shall share equally all costs of college maintenance, transportation and education of the Children, unless financially unable to do so. Further, the parties shall consult with each other and the Children in planning the college careers of the Children.
 (c) Medical Expenses. The parties agree as follows with respect to the medical expenses of the Children.
 (i) The Father shall provide hospital and medical insurance coverage for the Children, and to the extent not covered by such insurance, shall pay all medical, dental, hospital, prescription drug, eyeglasses and medical appliance expenses of the Children until each reaches the age of 18 years, except that if a child is pursuing a college education in accordance with the terms of this Agreement, such obligation of the Father shall continue until such child has completed such educational program or reached age 22, whichever first occurs.
 (ii) The Father will promptly pay or cause to be paid such medical expenses upon receipt from the Mother of reasonable statements for charges or expenses, and the mother shall cooperate in timely providing all documents and information required for making claims for payment or reimbursement of such medical expenses pursuant to any contract of health insurance the Father may provide for the Children. In the event the mother fails to timely provide documents and information for such purposes, the Father shall not be obligated to pay such expenses. The Mother shall maintain and furnish to the Father records of all expenses, whether or not covered by insurance, necessary to substantiate appropriate income tax deductions. This will include, but shall not be limited to, original receipts.
 (iii) The parties further agree that the Mother shall consult with the Father prior to incurring any medical expenditures (except in emergencies) that she might reasonably anticipate would exceed the sum of $250.00.
* * *
 (5) The parties agree that neither of them shall change the residence of the Children or any one of them from Cuyahoga County, Ohio or any county contiguous with Cuyahoga County, Ohio, without first giving sixty (60) days prior written notice. Upon receipt of such notice, the parties shall confer with each other with a view to arriving at a mutually satisfactory agreement concerning the rights and obligations of each party with respect to the Children as a result of the proposed change of residence of the Children. If the parties cannot reach agreement, the matter shall be submitted to the Court of Common Pleas for Cuyahoga County, Ohio, Domestic Relations Division, for resolution. Either party may submit to the Court the matter of a proposed change of residence of the Children at any time after receipt of such 60 day notice.
The parties marriage was dissolved by decree of the trial court dated March 25, 1986. The joint custody plan was incorporated into the final decree of dissolution.
Subsequently, both parties remarried. Plaintiff-appellee was remarried on January 30, 1988, to Arthur Scott, an educational administrator at various private schools throughout the country. The couple have had one child during the duration of their marriage. Defendant-appellant was remarried on December 23, 1988 to Kathryn Jane Neiheiser. Defendant-appellant and his second wife have had three children since their marriage.
At the time of the dissolution, both parties were residents of the greater Cleveland area. After her remarriage, plaintiff-appellee relocated with the couple's minor children to Seattle, Washington; Boston, Massachusetts; and ultimately Knoxville, Tennessee, where they currently reside. Each move was motivated by employment opportunities for plaintiff-appellee's husband at private schools in the above-named geographical locations. Due to Arthur Scott's position as an educational administrator, the couple's minor children were able to obtain full or partial tuition waivers at the various schools they attended during the period of relocation. Defendant-appellant maintained that he did not consent to the move of his children, although he never filed any objections with the trial court in an attempt to prevent the relocation.
Plaintiff-appellee has not been employed since the parties' dissolution. Her only source of income is stock and investment dividends from numerous long-held investment accounts. Plaintiff-appellee's average yearly investment income is between $30,000 and $40,000. In 1996, plaintiff-appellee's income greatly exceeded her average due to the one-time sale of investment property. Defendant-appellant has been and is currently employed with the Reliance Mechanical Corporation where he earns an average of $85,000 per year depending upon bonuses and company incentive plans.
It is undisputed that the children of the parties have always attended private school. While in Cleveland, the children attended Lake Ridge Academy. At the time plaintiff-appellee relocated to Seattle, Washington, the children were enrolled in Seattle Country Day School. From September of 1990 through the spring of 1991, defendant-appellant admittedly did not pay tuition for Seattle Country Day School, but did pay $350 per month per child in child support. The trial court determined that this arrangement was negotiated between the parties. Tuition for Seattle Country Day School was $5,891 per child. As of April of 1991, defendant-appellant stopped paying child support or educational expenses for the couple's minor children and plaintiff-appellee apparently ceased sending defendant-appellant the bills for the children's tuition.
During the 1991-92 school year, the couple's children attended the Northwest School in Seattle. The children received a full tuition waiver for that year as a result of the employment position of plaintiff-appellee's husband. Subsequently, plaintiff-appellee, her husband and the children relocated to Boston, Massachusetts where the children attended Noble and Greenough School in Dedham, Massachusetts. Once again, due to a partial tuition waiver, plaintiff-appellee paid one-half tuition for each child during the time they were enrolled at Noble and Greenough School from 1992 through 1995.
In 1996, the family relocated for the third time to Knoxville, Tennessee so plaintiff-appellee's husband could pursue additional employment opportunities in private education administration. During the 1995-96 and 1996-97 school years, the children of the parties attended Webb School with a full tuition waiver.
Ryan, the couple's oldest child, became emancipated upon graduation from high school in the spring of 1997. Ryan then enrolled in Swarthmore College which charges an annual tuition of $29,250. Rachelle, who became emancipated in August of 1998, enrolled in Dickinson College which charges an annual tuition of $28,630. Pursuant to the dissolution decree, the parties were equally obligated to pay one-half of the college educational expenses for each child.
Due to defendant-appellant's failure to pay the educational expenses of the couple's two children or child support during the above-referenced time period, plaintiff-appellee filed a motion to modify child support, a motion to show cause and a motion for attorney fees on October 5, 1993. Conversely, defendant-appellant filed a motion to determine overpayment and award credit, as well as his own motion for attorney fees on March 30, 1995. Plaintiff-appellee maintained that defendant-appellant was behind in his child support obligation and requested an increase in child support based upon an alleged increase in the child's expenses as well as an alleged increase in defendant-appellant's income during the relevant time period. Defendant-appellant maintained that he had actually overpaid his support obligation and sought attorney fees for the cost of filing the motions.
At this point, the trial court proceedings became somewhat convoluted and protracted due to a number of difficulties that apparently arose out of the trial court magistrate's handling of the underlying matter. The magistrate issued two separate reports which the trial court ultimately refused to adopt, each time referring the matter back for additional proceedings. During this time period a number of additional motions were filed by plaintiff-appellee. In September of 1997, plaintiff-appellee filed a second motion to show cause and motion for attorney fees relating to the college expenses of Ryan. On December 12, 1997, plaintiff-appellee filed an additional motion to modify child support based upon the emancipation of Ryan and the changed circumstances of the parties.
Ultimately, the trial court set aside all findings by the magistrate and conducted its own evidentiary hearing on all pending motions on June 18, 1998. The trial court eventually concluded that defendant-appellant was in arrears regarding child support/tuition obligations in the total amount of $131,241. The trial court reached its conclusion through the following factual findings:
 (1) For the 1990-91 school year, the children's tuition costs at Seattle Country Day School totaled $11,782. Defendant-appellant paid $5,600.00 in child support payments which the trial court deducted from the tuition obligation to reach a total arrearage for the year of $6,182.00.
 (2) For the 1991-92 school year, the children received a full tuition waiver at the Northwest School. The trial court determined that, since there was no tuition, defendant-appellant was obligated to pay $350.00 per month per child for a total arrearage of $8400.00 for the year.
 (3) For the 1992-93 school year, the children were enrolled at Noble and Greenough School under a partial tuition waiver. The trial court concluded that defendant-appellant was obligated to pay $13,500.00 which was the total out of pocket tuition expense for plaintiff-appellee.
 (4) For the 1993-94 school year, the children were again enrolled at Noble and Greenough School with a partial tuition waiver. The trial court determined that defendant-appellee owed $14,200.00 in tuition expenses for the year.
 (5) For the 1994-95 school year, the children were once again enrolled at Noble and Greenough School with a partial tuition waiver. The trial court determined that defendant-appellant was obligated to pay $15,050.00 in tuition expenses for the year.
 (6) For the 1995-96 school year, the children were enrolled at the Webb School with a full tuition waiver. The trial court again determined that, since there was no tuition obligation, defendant-appellant was obligated to pay $350.00 per month per child for a year end total of $8400.00. The trial court made the exact determination for the 1996-97 school year.
The trial court then recalculated defendant-appellant's child support obligation from May of 1997, the date Ryan became emancipated, to the date of the judgment and concluded that defendant-appellant's current child support arrearage for Rachelle was $10,261. The trial court added an additional $1,710 as future child support for Rachelle up to and including the date of Rachelle's emancipation. The trial court then subtracted $8,177 from the total arrearage for past travel expenses paid by defendant-appellant. The trial court also noted that the $16,100 previously paid in child support by defendant-appellant was for the period covering the years 1989, 1990 and 1991 for which no finding of arrearage was made. Therefore, defendant-appellant was not entitled to an offset for that sum.
Finally, the trial court determined that defendant-appellant owed $14,625 for Ryan's first year tuition at Swarthmore College and $29,685 in tuition for both children's college education for the 1998-99 scholastic year. The trial court then found defendant-appellant in contempt for failure to pay the above referenced amounts and ordered defendant-appellant to pay $9,005 in plaintiff-appellee's attorney fees.
The trial court's final judgment entry was journalized on August 10, 1998. On September 8, 1998, defendant-appellant filed a timely notice of appeal from the judgment of the trial court.
Defendant-appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN ITS FAILURE TO COMPLY WITH OHIO LAW.
Defendant-Appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN THAT ITS DECISION WAS INCONSISTENT WITH THE EVIDENCE PRESENTED.
Defendant-appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED IN ITS ABUSE OF DISCRETION.
Defendant-appellant's fourth and final assignment of error states:
 IV. THE TRIAL COURT ERRED IN THAT IT LACKED JURISDICTION.
Having a common basis in both law and fact, this court shall consider defendant-appellant's first, second, third and fourth assignments of error simultaneously. As previously stated, encompassed within defendant-appellant's four generally worded assignments of error are twenty separate "issues presented for review" which are repetitive and somewhat disjointed. Upon review of defendant-appellant's argument, it is apparent that the appeal centers upon the following three issues that were addressed by the trial court; child support, private school and college expenses; and the award of attorney fees to plaintiff-appellee.
 I. ISSUES RELATING TO CHILD SUPPORT
Defendant-appellant initially argues that the award of child support in this instance was improper. Specifically, defendant-appellant maintains that, pursuant to the joint custody agreement, which was incorporated into the decree of dissolution, he was obligated to pay child support during any time period where the couple's minor children were enrolled in public school. As the children have never attended public school, it is defendant-appellant's position that he did not have a legal obligation to pay child support. Defendant-appellant argues further that, even if such obligation did exist, the trial court further erred by improperly modifying child support without first determining that there had been a substantial change of circumstances; by improperly completing the child support worksheet; by refusing to consider in-kind contributions as child support; and by improperly awarding child support retroactively to May of 1997 when plaintiff-appellee's motion to modify was not filed until December 12, 1997.
When reviewing domestic relations determinations regarding child support, an appellate court should generally apply an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028, 1030; Blakemore v. Blakemore (1983),5 Ohio App.3d 217, 219, 450 N.E.2d 1140, 1142. An abuse of discretion connotes more than an error in law or judgment; it implies that the trial court's attitude is arbitrary, unreasonable or unconscionable. When applying the abuse of discretion standard of review, an appellate court is prohibited from merely substituting its judgment for that of the trial court. In re Jane Doe 1
(1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181.
In Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the Supreme Court held that the trial court must follow the child support statute, R.C. 3113.21.5, "literally and technically in all material respects." The court stated further that any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination. However, in shared parenting situations, the trial court is not obligated to employ a set formula for calculating child support but must, "analyze each request for deviation based upon the best interest of the children and the facts and circumstances of that case." See Pauly v. Pauly (1997), 80 Ohio St.3d 386,686 N.E.2d 1108; Donaldson v. Donaldson (Jan. 30, 1997), Franklin App. No. 96APF06-766, unreported.
Where there is a dispute over the interpretation to be given a particular clause in a separation agreement, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion and resolve the dispute. In re Dissolution ofMarriage off Seders (1987), 42 Ohio App.3d 155, 157,536 N.E.2d 1190, 1192-93. The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties, but the equities involved. Absent a showing of an abuse of discretion, an interpretive decision by the trial court will not be disturbed on appeal. Uram v. Uram (1989), 65 Ohio App.3d 96,582 N.E.2d 1060.
In the case sub judice, a review of the record demonstrates that the trial court applied the terms of the joint custody agreement between the parties to conclude that defendant-appellant was obligated to pay, not only the costs of the children's private school education, but in years where there was a tuition waiver due to the employment of plaintiff-appellee's spouse, child support in the agreed upon amount of $350 per month per child. The trial court properly concluded that the intent of the agreement was for defendant-appellant to pay the private school tuition of the children or child support in years where no tuition was due. This conclusion is supported by the fact that defendant-appellant did, in fact, pay child support during the first year that the children attended private school in Seattle in lieu of private school tuition, an alternative that the trial court determined was negotiated by the parties. Thus, it is apparent that the parties' agreement called for defendant-appellant to pay either the cost of private school tuition or, in years where there was no private school tuition, child support. Therefore, this court cannot now say that the trial court committed an abuse of discretion in concluding that defendant-appellant was obligated to pay an agreed amount of child support during scholastic years where no tuition was owed as such conclusion was clearly in the best interest of the couple's minor children and reflected the intent of the agreement between the parties. Roddy v. Roddy (Jan. 11, 1999), Pike App. No. 97-CA-600, unreported.
Defendant-appellant also contends that the trial court erred in modifying the underlying child support obligation without first determining whether a corresponding change in circumstances had occurred. Modification of a child support order requires a two-step process. The trial court must first determine whether the movant has demonstrated a substantial change of circumstances which was not contemplated at the time of the last support order. R.C. 3113.21.5 (B)(4); Baire v. Baire (1995),102 Ohio App.3d 50, 54, 656 N.E.2d 984. If a substantial change of circumstances is demonstrated, the trial court must then make a modification conforming to the child support schedule set forth in R.C. 3113.21.5. Contrary to defendant-appellant's position, the trial court did, in fact, consider the fact that a number of significant changes had taken place, including emancipation of one child and the pending emancipation of the second, the relative income of both parties and defendant-appellant's voluntary increase in his financial obligations since the time of the parties dissolution. Under the facts of this case, the trial court's decision to modify defendant-appellant's child support obligation does not constitute an abuse of discretion as the trial court did consider the issue of whether a substantial change in circumstances had occurred. See, generally, Weickert v.Weickert (Aug. 6, 1999), Sandusky App. No. S-98-045, unreported.
Defendant-appellant argues further that the trial court improperly completed the child support worksheet by basing its calculations upon an amount that did not accurately represent plaintiff-appellee's income. It is defendant-appellant's position that the trial court incorrectly applied the parties' 1996 income figures rather than the most recent figures and by failing to calculate child support using $150,000 as plaintiff-appellee's income.
As noted previously, the trial court possesses considerable discretion in matters of child support, and a trial court's determination will not be reversed absent a finding that the trial court abused its discretion. Pauly, supra. Using the obligor's gross income as a basis for determining the amount of child support to be paid, the trial court is to calculate the support obligation according to the schedule provided in R.C. 3113.21.5(D), and the worksheets in R.C. 3113.21.5(E) and (F).Murray v. Murray (Feb. 8, 1999), Warren App. No. CA98-08-097, unreported.
In the present case, a review of the record demonstrates that the trial court acted in accordance with R.C. 3113.21.5 and, therefore, did not abuse its discretion in calculating child support. As the trial court correctly concluded, defendant-appellant's child support obligation remained the same whether the 1996 or 1997 income figures were utilized. (T. 154.) Therefore, the trial court's child support calculations do not constitute an abuse of discretion and the utilization of the 1996 income figures constitutes, at most, harmless error. Marshall v.Marshall (Apr. 19, 1996). Greene App. No. 95-CA-42, unreported.
Defendant-appellant next maintains that the trial court improperly refused to consider in-kind contributions as child support. It is defendant-appellant's position that the trial court should have credited travel expenses as well as $16,100 in previously paid child support to reduce his outstanding child support obligation. Defendant-appellant apparently ignores the fact that the trial court did, in fact, award his previously incurred travel expenses of $8,177 as an offset against his child support obligation. In addition, the trial court considered the issue of the $16,100 previously paid by defendant-appellant and determined that it was paid during the years 1989, 1990 and 1991, a period of time during which no arrearage had accrued. Therefore, an offset for this amount was not appropriate. This court finds no abuse of discretion in the conclusions of the trial court.
Defendant-appellant's final argument relating to child support is premised upon the assertion that the trial court improperly awarded child support retroactively. Specifically, defendant-appellant maintains that the trial court awarded retroactive child support to May of 1997 when plaintiff-appellee's motion to modify child support was not filed until December of that same year. It is defendant-appellant's position that the trial court did not have jurisdiction to modify his child support obligation to a date prior to the filing date of the motion.
In this instance, defendant-appellant has mis-characterized the actions of the trial court. While it is true that the trial court modified defendant-appellant's support obligation as of May 1997, that modification was not based upon plaintiff-appellee's December 12, 1997 motion, but rather, the emancipation of the eldest of the couple's two children. The trial court merely recalculated the existing child support obligation for the remaining child in light of the emancipation. Under the present factual situation, this court finds that the trial court's recalculation does not constitute an abuse of discretion.
Defendant-appellant's issues presented for review relating to the outstanding child support obligation are not well taken.
 II. ISSUES RELATING TO EDUCATIONAL EXPENSES
Defendant-appellant argues that the trial court's determination relating to the allocation of educational expenses between the parties was improper. Specifically, defendant-appellant argues that, since plaintiff-appellee failed to forward bills for the private school tuition obligation for the children as required in the joint custody agreement, he was not obligated to pay that tuition obligation. Defendant-appellant argues further that he should not be obligated to pay one-half of the college educational expenses since he was precluded from participating in the choice of colleges for the children and is financially unable to pay. Finally, defendant-appellant argues that all educational expenses incurred were and are not reasonable.[1]
A separation agreement is no different from any other contract and the rules which govern contracts generally govern the validity and interpretation of separation agreements. Hagwood v.Hagwood (1973), 33 Ohio Misc. 227, 582 N.E.2d 1062. A contract must be founded upon a meeting of the minds and the parties are bound by the words of the contract. Herder v. Herder (1972),32 Ohio App.2d 75, 288 N.E.2d 213.
In the case sub judice, a review of the record demonstrates that defendant-appellant agreed to pay the costs of the private school education for the couples' two children. While there is some indication that plaintiff-appellee failed to send complete copies of tuition bills for the children, it is apparent from the record that defendant-appellant was aware of the cost of said tuition and failed to insure that those costs were paid in a timely manner pursuant to his obligation as set forth in the parties' agreement. Similarly, the record clearly demonstrates that defendant-appellant was not, as he maintains, precluded from participating in the choice of colleges for the couples' two children. In fact, defendant-appellant actually toured a number of Ohio colleges with the two children and was aware that each child would be looking at other schools in Pennsylvania and elsewhere on the east coast of the United States in the near future. Finally, defendant-appellant's claim of financial inability to pay is equally unsupported by the record. During the pendency of the underlying motions, defendant-appellant was earning approximately $85,000 per year, none of which was used to satisfy defendant-appellant's financial obligations relating to the educational costs of the children. The mere fact that defendant-appellant has incurred additional financial obligations since agreeing to be responsible for one-half of the college tuition for the children does not, in this instance, relieve defendant-appellant from his previously agreed upon financial obligations. Leasure v. Leasure (Mar. 12. 1998), Cuyahoga App. No. 72415, unreported.
For the foregoing reasons, this court finds that the trial court did not err by enforcing the terms of the agreement between the parties as they relate to educational expenses nor did the trial court abuse its discretion by rejecting defendant-appellant's position that he was financially unable to satisfy his obligation to pay one-half of the college tuition for the children, as previously agreed.
Defendant-appellant's issues presented for review relating to the educational expenses of the children are not well taken.
 III. ISSUES RELATING TO AWARD OF ATTORNEY FEES
Defendant-appellant maintains that the trial court erred and abused its discretion by finding defendant-appellant in contempt of court and awarding attorney fees to plaintiff-appellee. Specifically, defendant-appellant argues that he did not pay Ryan's college tuition costs because of financial inability, rather than a blatant disregard for a court order. Defendant-appellant argues further that the trial court improperly determined that defendant-appellant was in contempt of court for failure to pay the college expenses of Rachelle where that issue was not properly before the court. It is defendant-appellant's position that only the college expenses relating to Ryan were at issue as no motion relating to Rachelle's college tuition had been filed.
Generally, the award of attorney fees in a domestic relations action is within the sound discretion of the trial court. Swansonv. Swanson (1976), 48 Ohio App.2d 85, 355 N.E.2d 894. On appeal, a reviewing court is limited to determining "whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence, or whether there was an abuse of discretion." McCoy v. McCoy (1993),91 Ohio App.3d 570, 632 N.E.2d 1358, citing Swanson, supra; Oateyv. Oatey (1992), 83 Ohio App.3d 251, 614 N.E.2d 1054.
Given the fact that this court has previously rejected defendant-appellant's argument regarding his alleged financial inability to pay, this court cannot now say that the trial court abused its discretion by determining that defendant-appellant should be held in contempt of court and bear responsibility for plaintiff-appellee's attorney fees accordingly. See R.C.3105.21(C); Hughes v. Hughes (1991), 72 Ohio App.3d 286, 292,594 N.E.2d 653; Kotoch v. Kotoch (July 9, 1998), Cuyahoga App. No. 72919, unreported. In addition, the trial court clearly stated in its order dated May 7, 1998, that it would consider all issues relating to college expenses for the children at the time of the hearing. Defendant-appellant did not object to the trial court's order nor did defendant-appellant object during the hearing when evidence relating to Rachelle's college tuition was presented. Clearly, Rachelle's college tuition was a matter directly contemplated under the joint custody agreement and the trial court did not err or abuse its discretion by considering that issue at the time of the hearing.
Defendant-appellant's issues presented for review related to the trial court's award of attorney fees are not well taken.
Judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, A.J., CONCURS.
 KARPINSKI, J., CONCURS IN PART AND DISSENTS IN PART. (Seeattached Concurring and Dissenting Opinion.)
[1] A review of the record demonstrates that defendant-appellant failed to raise the issue of the reasonableness of the educational expenses before the trial court. Accordingly, this court need not address the issue for the first time on appeal. See Mancino v. Lakewood (1987), 36 Ohio App.3d 219,523 N.E.2d 332; State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78, 679 N.E.2d 706.