I respectfully concur in part and dissent in part. I disagree with the majority on two related issues: the obligation of defendant-appellant's father to pay child support instead of private high school tuition and holding him in contempt for failure to pay such amount.
As noted by the majority, the joint custody plan incorporated into the parties' divorce decree governing this matter expressly provided as follows:
 In the event that any child goes to public school
instead of private school, pursuant to the provisions hereof, the Father shall pay to the Mother as child support for such child, the sum of $350.00 per child per month for each month in which the child spends any time as a public school student.
(Ante at p. 3, Emphasis added.) It is undisputed that neither child ever attended any public high school.
Nevertheless, the trial court ordered defendant to pay on the order of $20,000 in child support for the 1991-1992, 1995-1996, and 1996-1997 school years, and found him in contempt in part for failing to do so. The majority affirms the trial court's judgment and contempt award of $9,000 in additional attorney fees.
The majority contends the trial court had discretion to "interpret" the plain language cited above to cover a situation which admittedly did not occur. (Ante at pp. 14-15.) However, it is well established that when the parties negotiate mutual promises which are reduced to writing, courts will not give the agreement a construction "other than that which the plain language of the agreement provides." E.g., Aultman Hosp. Ass'n v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, syllabus.
The interpretation of such unambiguous contract provisions is a question of law to which a reviewing court will not defer on appeal. E.g., Seringetti Constr. Co. v. Cincinnati (1988),51 Ohio App.3d 1, 4 (when "a contract is clear and unambiguous, the court need not concern itself with rules of construction or go beyond the plain language of the agreement to determine the rights and obligations of the parties. Instead, the court must give effect to the language of the contract * * *." (Citations omitted.)
None of the cases cited by the majority supports its argument to the contrary and, in fact, each case supports this dissent. (Ante at pp. 14-16 and 20-21.) Uram v. Uram (1989), 65 Ohio App.3d 96,99, cited by the majority, provides as follows:
 A separation agreement is no different from any other contract, and the rules governing contract generally govern the validity and interpretation of separation agreements. Hawgood v. Hawgood (1973), 33 Ohio Misc. 227, 235, 62 O.O.2d 427, 431, 294 N.E.2d 681, 686. A contract must be founded on a meeting of the minds, and the parties are bound only by the words of a contract. Herder v. Herder (1972), 32 Ohio App.2d 75, 76, 61 O.O.2d 62, 63, 288 N.E.2d 213, 214.
The majority's reference to these cases on pages 20-21 omits the next sentence in Uram:
 A court cannot make contracts for others and may not read language or terms into a contract. [Citing Herder v. Herder] at 76-77, 61 O.O.2d 63-64, 288 N.E.2d at 214-215.
Id. at 99 (Emphasis added).
The majority justifies its departure from the plain language of the parties' agreement by pointing out that the father paid $350 per child per month in 1990-1991 at a time when he did not pay their private school tuition in Seattle. The majority contends without further explanation that this event evidences "the intent of the agreement" to pay child support when no tuition was due. This argument can be understood in either of two different ways, neither of which is persuasive.
The majority appears to argue that the parties' performance four to five years after the agreement was adopted (1990-1991), shows their "intent" when they entered into it (1986). However, "[i]ntentions not expressed in writing are deemed to have no existence and may not be shown by parol evidence." Aultman Hosp.Ass'n, supra at 53 (citation omitted.) "[U]nexpressed intention cannot be implied in the contract." Id. at 54. Such a construction of the joint custody agreement by the majority "would not be a construction at all but would amount to the making of a new contract for the parties which is not the function of the court." Id. (Citation omitted.)
Alternatively, the majority opinion can be read to argue that the parties modified the terms of their original 1986 joint custody agreement by their subsequent behavior in 1990-1991. Such an argument requires finding that the father's payment of $350 per month per child during 1990-1991, when he did not receive or pay private tuition bills, somehow obligated him to pay child support. This argument is unpersuasive for two reasons.
First, the argument contradicts the trial court's findings. The trial court recognized no modification of the original joint custody agreement in the father's obligation to pay the private school tuition during the same 1990-1991 period. The court merely credited the $350 per child per month payments, totaling $5,600, against the tuition cost of $11,782. In short, the $350 per month payments made during this period did not alter defendant's tuition or child support obligations.
More importantly, however, even if the parties modified their original 1986 joint custody agreement as the majority appears to contend, the trial court could not have used this as a basis for imposing contempt sanctions. The imposition of civil contempt sanctions requires proving, by clear and convincing evidence, the violation of a court order. The alleged modification by the parties was never embodied in a court order. Thus any violation of the modified agreement (which was not part of the 1986 divorce decree), would not provide any basis for finding contempt. Because the record does not provide the necessary clear and convincing evidence, I respectfully dissent from its affirmance of the child support and contempt finding.