OPINION
{¶ 1} Defendants-Appellants, Eric Cunningham and Republic Services of Ohio Hauling, Inc. (hereinafter jointly referred to as "Appellants"), appeal a judgment of the Union County Court of Common Pleas, finding Appellants liable for Plaintiff-Appellee's, George Deskins, injuries from an October 2002 car accident. On appeal, Appellants assert that the trial court erred in failing to strike the testimony of a doctor concerning the projected cost of surgery; that the jury's verdicts for past as well as future medical expenses and inability to do usual activities was against the manifest weight of the evidence; that the trial court erred in instructing the jury on the issues of aggravation and acceleration of a pre-existing condition; that the trial court erred in refusing to submit to the jury Appellants' proposed interrogatories; and, that the trial court erred in not allowing the investigating officer to testify to his usual practices during an investigation. Based on the following, the judgment of the trial court is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.
 {¶ 2} In October of 2002, George Deskins was traveling eastbound on State Route 161 in Union County, Ohio. Deskins, a landscaper, was driving a one-ton dump truck and was towing a sixteen foot trailer, loaded with landscaping tools and supplies. While Deskins' vehicle was stopped, the trailer was struck from behind by a Mack truck owned by Republic Service of Ohio Hauling, Inc. and driven by Cunningham.
 {¶ 3} Following the collision, State Highway Patrolman Murphy arrived at the scene to investigate the accident. Trooper Murphy asked Deskins if he was injured, and Deskins stated that he was shaken but that he had no apparent injuries. There was no damage to Deskins' truck as a result of the accident, but the trailer sustained damages totaling three hundred thirty-five dollars and ninety-six cents. Those damages were paid for by Republic Service of Ohio Hauling, Inc.
 {¶ 4} In August of 2003, Deskins sought the treatment of back specialist Dr. Mark White, complaining of lower back pain. In March of 2004, an MRI was taken, from which Dr. White concluded that Deskins had degenerative disk disease at L1 through S1 and annular tears in the disc at L4 through L5 and L5 through S1. In October of 2003, Deskins sought treatment for knee pain from Dr. Mark Stover. Dr. Stover also ordered Deskins to obtain an MRI, from which Dr. Stover concluded that Deskins had a lateral meniscal tear in his right knee. In August of 2004, Deskins went back to Dr. Stover, again complaining of knee pain. After conducting an exam and reviewing Deskins' prior MRI, Dr. Stover concluded that Deskins had early degenerative arthritis of the right knee with lateral and medial meniscal tears.
 {¶ 5} In September of 2004, Deskins filed an action against Appellants. In his suit, Deskins sought to recover damages for injuries he allegedly sustained to his neck, back and knees as a result of the October 2002 accident. In July of 2005, a trial was held before a jury. At the trial, Appellants' fault for the accident was not in dispute. Rather, Appellants disputed the fact that the accident was the proximate cause of Deskins' claimed injuries.
 {¶ 6} Subsequently, the jury found Appellants liable for Deskins' injuries, specifically finding that the accident was the proximate cause of Deskins' injuries. Additionally, the jury awarded Deskins compensatory damages totaling five hundred thousand dollars.
 {¶ 7} It is from this judgment Appellants appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I The trial court erred by failing to strike Dr. White'stestimony concerning the projected cost of surgery for Deskins'sback injury, where Dr. White admitted that his testimonyconcerning such cost was speculative.
 Assignment of Error No. II The jury's verdict awarding Deskins $5,000 for past medicalexpenses and $300,000 for future medical expenses was against themanifest weight of the evidence.
 Assignment of Error No. III The trial court erred in its instructions to the juryconcerning the aggravation and acceleration of a pre-existingcondition, where there was no evidence that the accidentaggravated any pre-existing condition in Deskins' neck or back,and there was no evidence that the accident accelerated anypre-existing condition in his neck, back or knee.
 Assignment of Error No. IV The trial court abused its discretion by refusing to submit tothe jury appellant's (sic.) proposed interrogatories concerningDeskins' claimed injuries.
 Assignment of Error No. V The trial court erred by refusing to allow the highway patroltrooper who investigated the accident to testify concerning hispractices in investigating accidents and preparing accidentreports.
 Assignment of Error No. VI The jury's verdict awarding Deskins $80,000 for the "inabilityto do usual activities" in the future was against weight of theevidence.
 {¶ 8} Due to the nature of the assignment of errors, we will address them out of order.
 Assignment of Error No. I {¶ 9} In the first assignment of error, Appellants assert that the trial court erred by failing to strike the videotape deposition testimony of Dr. White, concerning the projected cost of Deskins' back surgery.
 {¶ 10} Objections to testimony elicited during a videotape trial deposition are subject to several layers of rules. The first of these layers comes from Civ.R. 32, which governs all depositions. Civ.R. 32(D)(3) specifically provides:
(a) Objections to the competency of a witness or to thecompetency, relevancy, or materiality of testimony are not waivedby failure to make them before or during the taking of thedeposition, unless the ground of the objection is one which mighthave been obviated or removed if presented at that time.
 (b) Errors and irregularities occurring at the oralexamination in the manner of taking the deposition, in the formof the questions or answers, in the oath or affirmation, or inthe conduct of parties and errors of any kind which might beobviated, removed, or cured if promptly presented, are waivedunless reasonable objection thereto is made at the taking of thedeposition.
Additionally, Supp.R. 15 governs videotape testimony and evidence. Supp.R. 15(A)(15) specifically provides:
(15) Objections at Trial. Objections should be made priorto trial and all objections must be made before actualpresentation of the videotape at trial. If an objection is madeat trial which has not been waived pursuant to Civil Rule32(D)(3) or previously raised and ruled upon, such objectionshall be made before the videotape deposition is presented. Thetrial judge shall rule on such objections prior to thepresentation of the videotape. If an objection is sustained, thatportion of the videotape containing the objectionable testimonyshall not be presented.
See, also, Vargo v. Travelers Ins. Co. (1987),34 Ohio St.3d 27, 32.
 {¶ 11} The Court of Common Pleas of Union County has also issued local rules relative to videotaped depositions. Union County Local Rule 25.01 provides:
If testimony is to be presented by video deposition, the videotape and a written transcript with page and line (as opposed totime) index to objections shall be submitted to the Court forruling on objections at the time of a pretrial, or not later thanseven (7) days prior to trial, whichever is earlier.
 {¶ 12} In the case sub judice, Appellants assert that the deposition testimony of Dr. White, regarding Deskins' lower back surgery, was speculative. Specifically, Appellants challenge the following testimony:
Question: As far as the annular tears, how is that treated inMr. Deskins's case?
 Dr. White: In my hands, to insure that the annular tears are,in fact, causing the majority of his back pain, typically Iperform a discogram * * * [.]
(Pretrial Tr. pp. 21-22.) Furthermore, during Appellants' cross-examination of Dr. White, Dr. White stated that he would not know if Deskins needed lower back surgery until he had performed the discogram. Additionally, Appellants assert that the costs, which Dr. White testified to regarding the lower back surgery, were also speculative.
 {¶ 13} At the time Dr. White's deposition was taken, Appellants did not object to Dr. White's testimony regarding the discogram or the cost of surgery. On July 18, 2005, a pretrial conference was held, just prior to the trial commencing. During the pretrial hearing, Appellants' objected to the use of Dr. White's video deposition, due to the speculative nature of his testimony. (Pretrial Tr. pp. 16-17.) In making their objection, Appellants stated that they were "asking orally for a motion in limine to strike that testimony since it's based upon pure speculation." (Pretrial Tr. at p. 17.) The trial court overruled Appellants' objection, finding Appellants' objection was not made during the deposition. At trial, Appellants did not renew their objection to Dr. White's testimony prior to the videotape testimony of Dr. White being played to the jury.
 {¶ 14} In this case, Appellants failure to object during the deposition was not fatal under the Civil Rules; however, Appellants' sole objection at the pretrial conference is not in conformity with the local rules as well as the Rules of Superintendence. As noted above the Union County Local Rule 25.01 requires that "objections shall be submitted to the Court for ruling on objections at the time of a pretrial, or not later than seven (7) days prior to trial, whichever is earlier." (Emphasis added.) In Ohio, "[c]ourts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the [Rules of Superintendence]." Article IV, Section 5(B), Ohio Constitution. In the same section, the Ohio Supreme Court is given the authority to promulgate rules governing practice in all state courts so long as these rules do not abridge, enlarge, or modify any substantive right. Id.
 {¶ 15} "When objection to testimony in a videotaped trial deposition must be raised is a procedural issue not affecting a substantive right." Novak v. Lee (1991), 74 Ohio App.3d 623,627-28. Accordingly, the Union County Court of Common pleas may make a rule requiring that objections be made at the earlier of pretrial or seven days prior to trial. As noted by the Novak
Court:
Considering the time-consuming task of altering a videotapeddeposition when an objection has been sustained, there is amplereason for the court to make a contemporaneous objection rule andto adhere to it. Were there not such a rule, the court could befaced frequently with the choice of delaying a trial or excludingthe videotape deposition in its entirety. Choosing the formercreates a waste of judicial resources. Choosing the latter couldunfairly prejudice the party presenting the deposition.
Id. at p. 628.
 {¶ 16} Here, Appellants' objection was clearly not in compliance with Union County Local Rule 25.01. While Appellant did object at the pretrial conference, that conference was held on the day of trial. Accordingly, under the local rule, Appellants were required to file their objections seven days before trial. Because Appellants failed to file their objections in compliance with the Union County local rules, those objections are waived.
 {¶ 17} In reviewing the record, we note that the videotape deposition of Dr. White was taken on July 5, 2005, which was just shy of two weeks before trial. In anticipation of Appellants' argument on reconsideration, we note that Appellants' claim also fails under the Rules of Superintendence. Again, Supp.R. 13(A)(15) provides that "[o]bjections should be made prior to trial and all objections must be made before actual presentationof the videotape at trial. If an objection is made at trial which has not been waived pursuant to Civil Rule 32(D)(3) or previously raised and ruled upon, such objection shall be madebefore the videotape deposition is presented." (Emphasis added.) Upon review of the trial record, Appellants failed to renew their objection to Dr. White's testimony prior to the video being played for the jury. Thus, Appellants also failed to comply with Supp.R. 13. As such, Appellants objections are also waived under the Rules of Superintendence.
 {¶ 18} Having found that Appellants' objection at pretrial do not comply with either the local rules of Union County or the Rules of Superintendence, Appellants' objections to the speculative nature of Dr. White's testimony are waived. While the trial court erred in finding that Appellants were required to object at the time of the deposition, they were also required to make their objections in compliance with the local rules as well as the Rules of Superintendence. Accordingly, the first assignment of error is overruled.
 Assignments of Error No. II VI {¶ 19} In the second assignment of error, Appellants assert that the jury verdict awarding Deskins past and future medical expenses is against the manifest weight of the evidence. In the sixth assignment of error, Appellants assert that the jury verdict awarding Deskins damages for inability to do usual activities in the future is against the manifest weight of the evidence. Because these assignments of error are interrelated, we will address them together.
 {¶ 20} In reviewing the judgment of the trial court under a claim that it is against the manifest weight of the evidence, an appellate court cannot substitute its judgment for that of the trial court. It is the function of the finder of fact to observe the demeanor of the witnesses, examine the evidence and weigh the credibility of the testimony and evidence presented. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77. An appellate court's role is limited to a review of the record to determine if the trial court's judgment was supported by some competent, credible evidence going to all the essential elements of the case, while being guided by the presumption that the findings of the trier of fact were correct. Id.; C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 21} While a determination of the elements of a claim is governed by the above standard, the manifest weight standard is somewhat different when the amount of damages are at issue as being against the manifest weight of the evidence. Compensatory damages are intended to make the plaintiff whole. Pryor v.Webber (1970), 23 Ohio St.2d 104, para. one of the syllabus. "For example, compensatory damages may, among other allowable elements, encompass direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering." Fantozzi v. Sandusky Cement Prod.Co. (1992), 64 Ohio St.3d 601, 612. In order to set aside a jury award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the jury verdict "is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages." Bailey v. Allberry (1993), 88 Ohio App.3d 432, 437.
 {¶ 22} Additionally, in Chester Park Co. v. Schulte (1929),120 Ohio St. 273, the Ohio Supreme Court held that where a verdict is found to be excessive, but not the product of passion or prejudice, an appellate court can order remittitur with the consent of the prevailing party. Id. at para. three of the syllabus. The Supreme Court in Chester Park went on to state, "We are, of course, referring only to those cases where the verdict is an expression of the opinion of the jurors and where the results could not be reached by mathematical computation." Id. at 280. Furthermore, in the absence of passion or prejudice, courts should be hesitant to order remittitur where an order or jury verdict is supportable by credible evidence. Villella v.Waiken Motors, Inc. (1989), 45 Ohio St.3d 36, 40. There are four criteria necessary for a court to order a remittitur: "(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages." Dardinger v. Anthem Blue Cross Blue Shield,98 Ohio St.3d 77, 2002-Ohio-7113, at ¶ 184, citing Chester Park,
120 Ohio St. at para. three of the syllabus. If the prevailing party refuses to accept the remittitur, a trial court must order a new trial on the entire verdict. Burke v. Athens (1997),123 Ohio App.3d 98, 102.
 {¶ 23} In the second assignment of error, Appellants specifically dispute the jury verdict as to past medical expenses of five thousand dollars and future medical expenses of three hundred thousand dollars. Appellants assert that the evidence in the record only supports approximately five hundred dollars of past medical expenses and a range of fifty to seventy-five thousand dollars for future medical expenses.
 {¶ 24} Initially, we note that the jury verdict of five hundred thousand dollars was broken down in the following manner:
Past Medical Costs of $5,000.00
 Future Medical Costs of $300,000.00
 Past Pain and Suffering of $10,000.00
 Future Pain and Suffering of $90,000.00
 Past Loss of Enjoyment of Life of $2,500.00
 Future Loss of Enjoyment of Life of $2,500.00
 Past Inability to do Usual Activities of $5,000.00
 Future Inability to do Usual Activities of $85,000.00.
Of the above expenses, Appellants are only challenging past and future medical expenses and eighty thousand dollars of damages for future inability to do usual activities. Because Appellants have not challenged any of the damages awarded for past or future pain and suffering, past or future loss of enjoyment of life and past inability to do usual activities, those damage awards are not at issue and are unaffected by our decision.
 {¶ 25} Turning to the Appellant's second assignment of error, we consider the issue of past medical costs first. At trial, Deskins testified that the day after the accident he went to an appointment with his family doctor, which had been scheduled prior to the accident. At that appointment, Deskins told his family doctor about the accident and informed him that he was sore all over. Additionally, Deskins testified that several months later he went back to his doctor for back and neck pain and that his doctor referred him to Dr. White. Deskins also stated that he also received a referral from his family doctor to see Dr. Stover for his knee. Deskins testified that he went to appointments with both Dr. White and Dr. Stover; however, he did not testify to any specific costs related to his appointments with either doctors. Deskins further testified that he had MRIs and other tests performed and that he was prescribed certain anti-inflammatory medications and pain relievers; however, he did not testify to any specific costs for those services or prescriptions.
 {¶ 26} As noted above, the videotape deposition of Dr. White was shown at trial. During Dr. White's video testimony, Dr. White stated that Deskins was his patient and that he saw Deskins for the first time in August of 2003. According to Dr. White, Deskins had been referred to him by his primary physician, because he had been experiencing neck and lower back pain. Dr. White testified that he again saw Deskins in September of 2003 and in June of 2004. Additionally, Dr. White testified that he had an MRI taken on Deskins and that Deskins had some physical therapy. Dr. White testified that cost for the first visit was one hundred and eighty dollars and the cost for the second and third visits were sixty dollars each, totaling three hundred dollars. Dr. White did not provide any testimony regarding the costs for the MRI or the physical therapy.
 {¶ 27} The videotape deposition testimony of Dr. Stover was also shown at trial. During Dr. Stover's video testimony, he stated that he first saw Deskins in October of 2003 and that Deskins was referred by Dr. White for knee pain. Dr. Stover testified that he had an MRI taken of Deskins knee. Dr. Stover also testified that that he again saw Deskins in August of 2004. Finally, he testified that Deskins' medical costs for his visits were one hundred and fifty dollars and forty-five dollars; however, Dr. Stover did not testify as to the cost of the MRI.
 {¶ 28} Finally, while several radiology reports, an MRI report, other test results and prescriptions were entered into evidence, the only actual medical bills entered into evidence were the bills from Dr. Stover and Dr. White, which included the same amounts that were testified to by the doctors.
 {¶ 29} Upon review of the entire record, we find that the jury's verdict of five thousand dollars for past medical costs is clearly excessive and against the manifest weight of the evidence in the record. As shown above, the only costs entered into evidence were of Deskins' office visits to Dr. White and Dr. Stover, which, when totaled, equals four hundred and ninety-five dollars. While there is testimony that Deskins had MRIs and was prescribed certain medications, there is absolutely no evidence of the costs of those procedures. As such, because the record fails to support any verdict amount over four hundred and ninety-five dollars, any such amount is excessive. There was simply nothing for the jury to make a cost determination on for the MRI and other procedures ordered by the doctors in this case; therefore, the jury cannot be allowed to simply infer or guess as to the costs of such procedures. Clearly, Deskins was free to introduce evidence of the exact costs through medical bills or estimated costs through expert testimony. However, Deskins presented no such evidence in this case.
 {¶ 30} Thus, finding that the evidence in this case does not support the jury verdict above the four hundred and ninety-five dollars proven in this case, the verdict in excess of that amount as to past medical costs may and ought to be set aside in this case, as it is against the manifest weight of the evidence. Because we are satisfied that a verdict of four hundred and ninety-five dollars is not based upon passion or prejudice and not excessive, plaintiffs may agree to a remittitur of that amount. Dardinger, 98 Ohio St.3d at ¶ 184. Otherwise, the judgment is to be reversed and a new trial ordered on the entire verdict. Id.
 {¶ 31} Turning to the issue of future medical costs, the jury verdict was three hundred thousand dollars in this case. Here, Appellants assert that the record only supports fifty to seventy-five thousand dollars of future medical costs.
 {¶ 32} During their video depositions, both Dr. Stover and Dr. White testified that Deskins may need future medical procedures. First, Dr. Stover testified that Deskins did have permanent injury and pain. Additionally, Dr. Stover testified that Deskins had knee arthroscopy as one option for the treatment of his knee. Dr. Stover testified that to his knowledge Deskins had not had the knee arthroscopy and that Deskins was not preparing to have that procedure. Finally, Dr. Stover gave no testimony as to the cost of the knee arthroscopy.
 {¶ 33} Second, Dr. White testified that he and Deskins had discussed two possible surgeries that could be performed to elevate his neck and back pain. The first surgery Dr. White discussed was neck surgery, and Dr. White testified that he had recommended that this surgery be performed. He stated that the surgery, which was a surgical fusion, typically costs between twenty to twenty-five thousand dollars and that the hospital fees could range from thirty to fifty thousand dollars. The second surgery Dr. White discussed was lower back surgery. As to this surgery, Dr. White specifically testified that, as of the time of his testimony, he was not sure whether this surgery would need to be performed, because a discogram, which had not yet been performed, was required to determine if lower back surgery was necessary. Dr. White went on to testify that the costs of the lower back surgery could range from five to ten to twenty-five thousand dollars and that hospital fees could range from five to ten to fifty thousand dollars.
 {¶ 34} During Deskins' testimony, he testified that he had not yet had any surgeries because of the risks involved and that he was reluctant to have the surgeries because of those risks. Deskins also testified that he will have surgery when the pain becomes unbearable.
 {¶ 35} Finally, a written report was entered into evidence in which Dr. White estimated that the cost of neck and lower back surgery could each range from sixty to eighty thousand dollars.
 {¶ 36} When assessing prospective damages, a jury should be confined to those damages that are "reasonably certain to follow from the injury complained of." Roberts v. Mutual Manufacturing Supply Company (1984), 16 Ohio App.3d 324, 325, citingPennsylvania Co. v. Files (1901), 65 Ohio St. 403, 407. In Ohio, in order to establish future medical expenses, a plaintiff is required to provide the testimony of expert witnesses. See,Day v. Gulley (1963), 175 Ohio St. 83, 86-87, citing Tully v.Mahoning Express Co. (1954), 161 Ohio St. 457; Brooks v.Wilson (1994), 98 Ohio App.3d 301, 307.
 {¶ 37} Looking at the evidence presented at trial, Deskins did provide expert testimony as to the neck and lower back surgery. Appellants argue that the testimony as to the lower back surgery was too speculative and that the jury should not have been allowed to consider that evidence. Dr. White did testify that he would not know for certain whether Deskins needed to have lower back surgery until the discogram was performed. However, based upon our conclusion in the first assignment of error, any error related to Dr. White's testimony regarding the lower back surgery has been waived. Furthermore, the jury was properly instructed as to the issue of what future medical expenses it could consider. Therefore, we will consider Dr. White's testimony as to cost of lower back surgery in our analysis. When considering the evidence as to future medical costs, in a light most favorable to the plaintiff, we are satisfied that Deskins did present some competent, credible evidence to support at best one hundred and sixty thousand dollars in damages.
 {¶ 38} As noted above, the jury awarded Deskins three hundred thousand dollars in damages. Like the past medical costs, we find that evidence in this case does not support the jury verdict above the one hundred and sixty thousand dollars proven in this case. Therefore, the verdict in excess of that amount as to future medical costs may and ought to be set aside in this case, as it is against the manifest weight of the evidence. Again, we are satisfied that a verdict of one hundred and sixty thousand dollars is not based upon passion or prejudice, because there is expert testimony to support such evidence, and that amount is not excessive based upon the testimony provided. Thus, plaintiffs may agree to a remittitur of that amount; otherwise, the judgment is to be reversed and a new trial ordered on the entire verdict.Dardinger, 98 Ohio St.3d at ¶ 184.
 {¶ 39} In the sixth assignment of error, Appellants assert that the jury's verdict of eighty thousand dollars for inability to do usual activities is against the manifest weight. Specifically, Appellants assert that the jury's verdict is not supported by competent, credible evidence because Deskins continued to engage in his work activities as a landscaper. Further, Appellants assert that there was no expert testimony so support an award of eighty thousand dollars.
 {¶ 40} As noted above, the jury verdict awarded Deskins five thousand dollars for past inability to do usual activities damages and eighty-five thousand dollars for future inability to do usual activities damages. From Appellants brief, it appears that they do not challenge past inability to do usual activities damages. Thus, those damages will not be at issue in this opinion.
 {¶ 41} A plaintiff may pray for inability to do usual activities damages where he or she can show that "the inability to perform the plaintiff's usual specific activities which had given pleasure to this particular plaintiff, such as playing golf, dancing, bowling, playing musical instruments, and engaging in specific outdoor sports." Fantozzi, 64 Ohio St.3d at 617. In the case sub judice, Deskins testified that since the accident he has not been able to hike, go for brisk walks, bowl or enjoy baseball games. Based upon Deskins' testimony there is some competent credible evidence to support a finding that he has been unable to perform usual activities that had given him pleasure as a result of the accident.
 {¶ 42} Additionally, Appellants assert that the damage amount is not supported by any "evidence — expert or otherwise." (Appellants' Brief p. 24.) Appellant cites no authority for the proposition that expert evidence is necessary to support a damage award for inability to perform the plaintiff's usual activities. Furthermore, we are not able to find any authority to support that portion of Appellants' claim. Because there is no requirement that such damages be supported by specific expert testimony as to specific dollar amounts, we cannot say that the jury's verdict "is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages." Bailey, 88 Ohio App.3d at 437.
 {¶ 43} Thus, having found that jury's verdicts as to past medical expenses above the amount of four hundred and ninety-five dollars and future medical expenses above the amount of one hundred and sixty thousand dollars are against the manifest weight of the evidence, we sustain Appellants' second assignment of error. Furthermore, those damage awards are subject to remittitur upon the plaintiff's consent; otherwise, a new trial must be granted on the entire verdict. However, having found that future inability to perform usual activities damages are not against the manifest weight of the evidence, the sixth assignment of error is overruled.
 Assignment of Error No. III {¶ 44} In the third assignment of error, Appellants assert that the trial court erred in its instructions to the jury concerning the aggravation and acceleration of a pre-existing condition. Specifically, Appellants argue that there is no evidence to support such an instruction.
 {¶ 45} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Marshallv. Gibson (1985), 19 Ohio St.3d 10, 12. However, the precise language of a jury instruction is within the discretion of the trial court. Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679,690. An appellate court's duty is to review the instructions as a whole, and, "[i]f, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." Wozniak v.Wozniak (1993), 90 Ohio App.3d 400, 410. Additionally, "misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." Id. Thus, absent an abuse of discretion, this Court must affirm the trial court's language of the jury instructions. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse-of-discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 46} On appeal, Appellants assert that there was no evidence establishing that the accident aggravated or accelerated any pre-existing condition in Deskins' neck, back or knee. However, upon review of the record, it is clear that there was evidence before the jury of a pre-existing condition. Specifically, Dr. Stover, who testified about Deskins' knee injury, stated that Deskins' x-ray and MRI indicated that Deskins had some degree of degenerative arthritis. Additionally, Appellants' counsel on cross-examination specifically questioned Dr. Stover as to whether degenerative arthritis happens over a long period of time, to which Dr. Stover answered affirmatively.
 {¶ 47} Thus, having found that evidence was presented to the jury regarding a pre-existing condition, we cannot find that the trial court erred in instructing the jury on the aggravation and acceleration of a pre-existing condition. Accordingly, the third assignment of error is overruled.
 Assignment of Error No. IV {¶ 48} In the fourth assignment of error, Appellants assert that the trial court erred in refusing to submit to the jury Appellants' purposed interrogatories. Appellants specifically argue that the trial court was required to submit their purposed interrogatories pursuant to Civ.R. 49(B).
 {¶ 49} Civ.R. 49(B) provides:
The court shall submit written interrogatories to the jury,together with appropriate forms for a general verdict, uponrequest of any party prior to the commencement of argument.Counsel shall submit the proposed interrogatories to the courtand to opposing counsel at such time. The court shall informcounsel of its proposed action upon the requests prior to theirarguments to the jury, but the interrogatories shall be submittedto the jury in the form that the court approves. Theinterrogatories may be directed to one or more determinativeissues whether issues of fact or mixed issues of fact and law.
(Emphasis added.)
 {¶ 50} Appellants correctly assert that the wording of Civ.R. 49(B) has been found to be mandatory in character and leaves no discretion in the trial court on the question of submission, upon request of proper interrogatories to the jury. Riley v. City ofCincinnati (1976), 46 Ohio St.2d 287, 298, citing Ragone v.Vitali Baltrami, Jr., Inc. (1975), 42 Ohio St.2d 161, 165. However, upon review of the record and Appellants concede in their brief, Appellants never filed any interrogatories with the trial court. Appellants state in their brief in a footnote that they did give the interrogatories to the trial court and opposing counsel when they raised their oral motion for interrogatories. Nevertheless, it is clearly the duty of counsel to create a proper record at trial. See, State v. Goodwin (1999),84 Ohio St.3d 331, 340. The failure to create a record of these proceedings results in the waiver of any alleged error. Id. Furthermore, Appellants did not proffer any specific interrogatories into the trial record.
 {¶ 51} Thus, because this Court has nothing to review, we must find that Appellants assignment of error is without merit. According, the fourth assignment of error is overruled.
 Assignment of Error No. V {¶ 52} In the fifth assignment of error, Appellants assert that the trial court erred by refusing to allow Appellants to question Trooper Murphy about his usual practices in investigating accidents and preparing accident reports.
 {¶ 53} Trial courts have broad discretion in the admission or exclusion of evidence. Huffman v. Hair Surgeons, Inc. (1985),19 Ohio St.3d 83. Absent an abuse of discretion, a trial court's rulings on the admissibility of evidence will not be disturbed by courts on appellate review. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore, 5 Ohio St.3d at 219.
 {¶ 54} In the case sub judice, Appellants contend that the trial court should have allowed them to inquire into Trooper Murphy's accident investigation protocol or practices under Evid.R. 406. Specifically, Appellants argue that they wanted to use Trooper Murphy's habit testimony to show that he would normally mention skid marks in his accident reports if skid marks were present at the scene. Thus, Appellants assert that because there was no mention of skid marks in Trooper Murphy's accident report herein, none in fact existed at the scene.
 {¶ 55} Evid.R. 406 provides:
Evidence of the habit of a person or of the routine practiceof an organization, whether corroborated or not and regardless ofthe presence of eyewitnesses, is relevant to prove that theconduct of the person or organization on a particular occasionwas in conformity with the habit or routine practice.
"Habit" has been defined as a "`person's regular practice of meeting a particular kind of situation with a specific type of conduct. * * * The doing of the habitual acts may become semi-automatic.'" Bolan v. Adams (1984), 19 Ohio App.3d 206,207, citing McCormick, Evidence (2 Ed. Cleary Ed. 1972) 462-463, Section 195. Thus, the foundational requirement for admission of habit testimony is the establishment of the occurrence of the stimulus, and of a pattern of behavior in response. Cannell v.Rhodes (1986), 31 Ohio App.3d 183, 185.
 {¶ 56} Upon review of the record, we are unable to conclude that the trial court erred because it never actually excluded any evidence. During Appellants' examination of Trooper Murphy, defense counsel did attempt to ask Trooper Murphy if he would have included a notation about skid marks in his accident report if there had been skid marks at the scene, prior to laying any foundation on the issue. At that point there was a sidebar discussion that took place regarding Appellants' line of questioning, and it was the trial court that suggested that Evid.R. 406 should be considered by Appellants. While we acknowledge that Appellants' counsel did request to ask Trooper Murphy about his training and that the trial court stated itwould sustain any objections made to those questions, Appellants simply did not pursue the issue any further. Essentially, following the sidebar discussion Appellants' counsel stated that he would offer a proffer of evidence on the issue later and then moved on in his questioning.
 {¶ 57} While the trial court did discourage Appellants' counsel from questioning Trooper Murphy on this issue, we again note that it is Appellants' counsel who is required to make a proper record and at least attempt to get things into evidence. Additionally, we note that the trial court merely stated that it would sustain any objections; however, no objections were actually made or sustained and no evidence was actually excluded. Because Appellants never attempted to ask Trooper Murphy any of the foundational questions required to show habit, there was no objection by Deskins and no ruling was ever actually made by the trial court to exclude such evidence. Accordingly, we cannot find any error by the trial court, because the trial court never actually excluded any evidence. Thus, the fifth assignment of error is overruled.
 {¶ 58} Having found error prejudicial to Appellants herein, in the particulars assigned and argued, in the second assignment of error, but having found no other error prejudicial to Appellants, the judgment is reversed in part, affirmed in part and remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and causeremanded.
 Shaw and Cupp, JJ., concur.